IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NETJETS LARGE AIRCRAFT, INC., | ) | |
| NETJETS INTERNATIONAL, INC., | ) | |
| NETJETS AVIATION, INC., and | ) | |
| EXECUTIVE JET MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 2:11-CV-1023 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' AMENDED ANSWER, COUNTERCLAIMS, AND DEMAND FOR
JURY TRIAL**

**AMENDED ANSWER**

The defendant, the United States of America, responds to the Plaintiffs' complaint as

follows:

FIRST DEFENSE:

To the extent that any issue in the instant case was an issue that was in controversy in

*Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463 (Fed. Cir. 1998) and whose

determination was necessarily depended upon by the court in that case, plaintiffs are barred under

the doctrine of collateral estoppel from re-litigating such issues in this case.

SECOND DEFENSE:

The United States responds to each of the numbered paragraphs of Plaintiffs' complaint

as follows (all statements not specifically admitted are denied):

## **NATURE OF THE ACTION**

1.      *Plaintiffs provide management services to private owners and leaseholders of aircraft. Plaintiffs bring this action for refund and abatement of excise taxes, interest and penalties totaling $642,706,119.89, which the Internal Revenue Service ("IRS") has illegally assessed against them under section 4261 of the Internal Revenue Code, 26 U.S.C. § 4261.*

**ANSWER:**     The United States admits that the Plaintiffs have brought this action for refund and abatement of excise taxes, interest, and penalties totaling $642,706,119.89, denies that the IRS illegally assessed these taxes, interest, and penalties, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the first paragraph of the Plaintiffs' complaint.

2.      *Section 4261 of the Internal Revenue Code, which is commonly referred to as the "ticket tax," imposes an excise tax on payments made in exchange for "taxable transportation" by air. It is called the "ticket tax" for good reason, because Congress intended it to apply to passengers who purchase a ticket (or the equivalent of a ticket) for transportation on a commercial or charter aircraft that is owned by others. Under those circumstances, the passenger is paying for "transportation," because the passenger has no ownership rights in the aircraft on which he is travelling; rather, his ticket simply provides him a temporary right to enter upon the aircraft for the limited purpose of being flown from point A to point B.*

**ANSWER:**  With respect to the first sentence of the second paragraph, the United States admits that 26 U.S.C. § 4261(a) imposes a tax upon amounts paid for all taxable transportation, as defined by 26 U.S.C. § 4262.  The United States lacks knowledge or information sufficient to form a response to the remaining allegations of the second paragraph, except to the extent that it

admits that: Congress intended the tax of § 4261(a) to apply to all amounts paid for taxable transportation.

3.    *The ticket tax was not intended to apply to private aircraft owners and the fees they pay to maintain and operate their aircraft.  Unlike a commercial or charter passenger, an owner owns the aircraft that is providing the transportation, and thus an owner transports himself when he flies on his own aircraft, even if he pays others to assist him in maintaining and operating the aircraft.  Thus, bona fide ownership is the key factor that separates taxable payments made for transportation from non-taxable payments made for aircraft management and other services.*

**ANSWER:**  The United States admits that 26 U.S.C. § 4261(a) imposes a tax upon all taxable transportation, as defined by 26 U.S.C. § 4262.  The United States admits that ownership is a factor considered under the law for determinations of whether an amount paid by a person to a third party is an amount paid for taxable transportation within the meaning of 26 U.S.C. § 4261(a).  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the third paragraph of the Plaintiffs' complaint.

4.    *The IRS has expressly recognized ownership as a critical factor in determining application of the ticket tax. In 1958, just four years after enactment of the ticket tax, the IRS published a revenue ruling in which it ruled that the fees paid by an aircraft owner to an airline company to manage and operate the owner's aircraft were not subject to the ticket tax, because the airline company was simply acting as the owner's agent and assisting him in transporting himself, rather than providing the owner with transportation.  See Rev. Rul. 58-215, 1958-1 C.B. 439.*

**ANSWER:** The United States admits: that § 4261 was enacted in 1954; that Rev. Rul. 58-215 was issued in 1958; that aircraft ownership was one of several factor considered by the IRS in issuing that ruling. The United States denies the remaining allegations contained in the fourth paragraph of the Plaintiffs' complaint.

5.     *But despite the plain language of the statute and the IRS's own precedent, the IRS's assessments in this case improperly extend application of the ticket tax beyond commercial airline and charter passengers, to persons who own the aircraft on which they fly. The IRS has assessed the ticket tax on the fees that aircraft owners pay to Plaintiffs to manage and maintain the owners' aircraft. These fees are not the equivalent of the purchase of a commercial airline ticket, or even a seat on a charter flight. Rather, like the aircraft owner in the 1958 revenue ruling, the persons who pay these fees to Plaintiffs already have the right to fly on the aircraft at issue because they own (or lease) the aircraft. Plaintiffs do not transport these owners, but instead simply act as the owners' agent and assist them in transporting themselves on their own planes. As such, the ticket tax has no application to the fees that aircraft owners pay to Plaintiffs to manage and maintain their aircraft for them.*

**ANSWER:** The United States admits that the IRS has assessed the tax of 26 U.S.C. § 4261(a) upon fees that program participants in Plaintiffs' enterprises pay to the manager of the program for the management and maintenance of the aircraft, and denies the truth of the allegations contained in the fifth paragraph of the Plaintiffs' complaint.

6.     *Not only is the IRS attempting to tax fees that are not subject to the ticket tax, but it is attempting to improperly collect the tax from the Plaintiffs based on secondary liability, despite having failed to give EJM or the NetJets entities any advance notice that the IRS intended to*

*apply the tax with respect to many of the fees at issue in this case. Under 26 U.S.C § 4261(d), the ticket tax is to be paid by the person who pays for the commercial or charter flight, i.e., the ticket purchaser. Entities that sell taxable transportation - e.g., commercial airlines and charter companies - are not primarily liable for the tax; rather they are simply tasked with collecting the ticket tax from the purchasers. See 26 U.S.C. § 4291. The IRS, however, has assessed the tax against EJM and the NetJets entities based on a statutory provision that makes "the carrier providing the initial segment of [taxable] transportation" secondarily liable for payment in the event the tax is not paid "at the time payment for transportation is made." 26 U.S.C. § 4263(c).*

**ANSWER:** The United States admits that 26 U.S.C. § 4261(a) imposes a tax "on the amount paid for taxable transportation," as defined by 26 U.S.C. § 4262. The United States admits that 26 U.S.C. § 4291 provides that "[e]xcept as otherwise provided in section 4263(c), every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment." The United States admits that 26 U.S.C. § 4263(c) provides that "[w]here any tax imposed by section 4261 is not paid at the time payment for transportation is made, then, under the regulations prescribed by the Secretary, to the extent that such tax is not collected under any other provision of this subchapter, such tax shall be paid by the carrier providing the initial segment of such transportation which begins or ends in the United States." The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the sixth paragraph of the Plaintiffs complaint, except that: the United States admits that certain of the taxes involved in this lawsuit have been assessed pursuant to 26 U.S.C. § 4263(c).

*7.	Although 26 U.S.C. § 4263(c) imposes secondary liability against the tax collector, the law requires that a party "in a secondary position as to liability for any tax" be given notice of the duty to collect the tax that is "precise and not speculative."  Central Illinois Public Service Co. v. United States, 435 U.S. 21, 31 (1978).  In this case, the IRS did not provide EJM and the NetJets entities any type of clear guidance as to the specific types of fees to which the IRS intended to apply the ticket tax.  Thus, EJM and the NetJets entities did not know all of the types of fees for which they should collect the ticket tax.  As a result, EJM and the NetJets entities are stuck with a $642 million-plus bill for past taxes the IRS never indicated they were required to collect and for which they are not even the actual taxpayers.*

**ANSWER:**  The United States denies that the word "secondary" is contained within § 4263(c), and thus denies the first sentence of the seventh paragraph of the Plaintiffs' complaint, except to admit that the <u>Central Illinois</u> decision is contained at 435 U.S. 21.  The United States denies the remaining allegations contained in the seventh paragraph of Plaintiffs' complaint.  The United States admits that 26 U.S.C. § 4261(a) imposes a tax "on the amount paid for taxable transportation," as defined by 26 U.S.C. § 4262, including amounts paid for monthly management fees.  The United States avers that there is sufficient guidance regarding the duty of a collector to report and pay over the tax imposed by 26 U.S.C. § 4261.

*8.	The IRS's assessment of the ticket tax against EJM and the NetJets entities is also improper because the IRS is treating EJM and the NetJets entities differently than it has treated other companies that provide the same types of services.  The IRS has not assessed a ticket tax against certain of Plaintiffs' competitors for some of the same types of fees that are part of the assessments at issue in this case.  This not only places Plaintiffs at a significant disadvantage, by*

*making them pay millions of dollars in taxes that their competitors do not have to pay, but it also violates the established legal principle requiring the IRS to treat similarly situated taxpayers in a consistent fashion.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the eighth paragraph of the Plaintiffs' complaint, and further avers that it is precluded by 26 U.S.C. § 6103 from responding to the allegations regarding assessments of the ticket tax to Plaintiffs' competitors.

*9. Accordingly, Plaintiffs are entitled to a refund and abatement of the ticket taxes the IRS has illegally assessed against them.*

**ANSWER:** The United States denies the allegations contained in the ninth paragraph of the Plaintiffs' complaint.

*10. Plaintiffs EJM, NJA, NJI, and NJLA are wholly owned subsidiaries of NetJets Inc., which is not a party to this suit. NetJets, Inc., through its subsidiaries and affiliates, employs approximately 1500 people in Columbus and 3000 additional pilots from across the country.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the tenth paragraph of the Plaintiffs' complaint.

*11. EJM is a corporation organized and existing under the laws of Ohio with its principal place of business in Cincinnati, Ohio.*

**ANSWER:** The United States admits the allegations contained in the eleventh paragraph of the Plaintiffs' complaint.

*12. NJA is a corporation organized and existing under the laws of Delaware with its principal place of business in Columbus, Ohio.*

**ANSWER:** The United States admits the allegations contained in the twelfth paragraph of the Plaintiffs' complaint.

*13.    NJI is a corporation organized and existing under the laws of Delaware with its principal place of business in Columbus, Ohio.*

**ANSWER:** The United States admits the allegations contained in the thirteenth paragraph of the Plaintiffs' complaint.

*14.    NJLA is a corporation organized and existing under the laws of Delaware with its principal place of business in Columbus, Ohio.*

**ANSWER:** The United States admits the allegations contained in the fourteenth paragraph of the Plaintiffs' complaint.

*15.    EJM provides aircraft management services and aviation expertise to persons who own or lease entire aircraft. The NetJets entities provide aircraft management services and aviation expertise to owners or lessees of fractional interests in aircraft.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the eleventh paragraph of the Plaintiffs' complaint.

*16.    Defendant is the United States of America.*

**ANSWER:** The United States admits the truth of the allegations contained in the sixteenth paragraph of the Plaintiffs' complaint.

**<u>JURISDICTION AND VENUE</u>**

*17.    This Court has jurisdiction over this action under 28 U.S.C. § l346(a)(1).*

**ANSWER:** The United States admits that if jurisdiction exists, it exists pursuant to 28 U.S.C. §§ 1331 and 1346(a)(1).

*18.   Each Plaintiff has fully exhausted its claims before the IRS prior to filing this action, as required by 26 U.S.C. § 7422.*

**ANSWER:**  The United States admits the truth of the allegations contained in the eighteenth paragraph of the Plaintiffs' complaint.

*19.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(a)(2), because each of the Plaintiffs is currently headquartered in a city within the Southern District of Ohio: EJM is headquartered in Cincinnati and the NetJets entities are headquartered in Columbus.*

**ANSWER:**   The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the nineteenth paragraph of the Plaintiffs' complaint.

## FACTUAL BACKGROUND

### A.   EJM's Business

*20.   EJM provides management services to individuals and corporations that own or lease entire aircraft.  The maintenance and operation of aircraft requires specialized skills, expertise, and regulatory knowledge that most owners do not possess.  Aircraft owners commonly find it necessary to rely on companies like EJM, which specializes in maintaining and operating private aircraft.*

**ANSWER:**  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twentieth paragraph of the Plaintiffs' complaint.

*21.   EJM's management services include assistance with Federal Aviation Authority ("FAA") filings and aircraft inspection, maintenance, service, repair, overhaul, and testing.  Upon request, EJM provides pilots and crew (although owners may provide their own qualified pilots).*

*EJM also facilitates the aircraft owners' travel by handling flight planning, weather and communication services, and aircraft hangaring.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twenty-first paragraph of the Plaintiffs' complaint.

*22. EJM receives monthly management fees in exchange for its management services. The monthly management fees vary based on the management services provided to an owner. For any given set of management services, the fees are a fixed monthly amount that does not vary based on the owner's aircraft use. The owner must pay the fees even if the owner does not use the aircraft at all.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twenty-second paragraph of the Plaintiffs' complaint.

*23. EJM also charges the owners for miscellaneous pass-through costs incurred in the provision of services. For example, EJM charges the owner for fuel, flight planning, weather and communications services, and aircraft parts.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twenty-third paragraph of the Plaintiffs' complaint.

*24. The services provided by EJM to the aircraft owners are for the benefit of and at the direction of the owners.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twenty-fourth paragraph of the Plaintiffs' complaint.

*25. EJM also operates an aircraft charter business. Most EJM management customers agree to lease their aircraft to EJM for use in EJM's charter business during times when the customer*

*is not using the aircraft. EJM's management customers earn income from the lease*

*arrangements based on an hourly lease rate. Because the passengers on EJM charter flights do*

*not own or lease the aircraft on which the charter flight is provided, EJM collects and remits the*

*ticket tax for all payments it receives in exchange for transportation provided through the*

*charter service. Because the ticket tax on these charter flights has been collected and remitted to*

*the IRS and because EJM does not dispute that the tax applies to EJM's sale of charter flights,*

*the ticket taxes collected and remitted in connection with EJM charter flights are not at issue in*

*this case.*

**ANSWER:** The United States admits that the tax imposed upon taxable transportation pursuant

to 26 U.S.C. § 4261(a) collected and remitted in connection with amounts paid for EJM charter

flights are not at issue in this case, and lacks knowledge or information sufficient to form a belief

as to the truth of the remaining allegations contained in the twenty-fifth paragraph of the

Plaintiffs' complaint.

**B.    The NetJets Entities' Business**

26.    *The NetJets entities' business is similar to that of EJM, except that they provide*

*management services to fractional owners of aircraft, not owners of entire aircraft. A*

*fractionally owned aircraft is one owned by multiple persons, each of whom owns a specified*

*share of the aircraft.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to

the truth of the allegations contained in the twenty-sixth paragraph of the Plaintiffs' complaint.

27.    *The management services provided by the NetJets entities are essentially identical to*

*those that EJM provides to whole aircraft owners.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twenty-seventh paragraph of the Plaintiffs' complaint.

28. *In addition to providing management services, the NetJets entities facilitate the joint ownership or lease of aircraft, in part by bringing interested parties together and streamlining the process of purchasing and maintaining a fractionally owned aircraft.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twenty-eighth paragraph of the Plaintiffs' complaint.

29. *Persons that purchase fractional aircraft interests through the NetJets entities enter into four standardized agreements: a purchase agreement, an owners' agreement, a management agreement, and a master exchange agreement[1].*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the twenty-ninth paragraph of the Plaintiffs' complaint.

30. *Under the purchase agreement and bill of sale, an owner purchases a fractional interest in a specific FAA-registered aircraft. As with the purchase of any large asset, a person who purchases a fractional share of an aircraft must make a large initial capital investment. But once that investment is made, the fractional owner is the bona fide owner of a fraction of an aircraft. The fractional owner is entitled to use the aircraft or lend it to others, and is responsible for regulatory compliance. Moreover, the owner is entitled to tax depreciation for its fractional interest in the aircraft, and bears the financial risk that the aircraft will decrease in*

---

[1] *Instead of purchasing, a person can opt to enter into a multi-year lease of a fractional interest in an aircraft. The holder of a fractional leasehold in an aircraft is required to enter into agreements that are analogous to the agreements entered into by those who purchase fractional interests in aircraft.*

*value, that it will not use its aircraft as often as it had hoped, or that the aircraft will be*

*damaged or destroyed.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to

the truth of the allegations contained in the thirtieth paragraph of the Plaintiffs' complaint.

*31.     Under the owners' agreement, the owners agree to the terms of use for their jointly*

*owned aircraft.  The owners agree to their allotted hours of use, and agree to enter a master*

*exchange agreement (described below) for their purchased aircraft.  Each owner also agrees to*

*hire the NetJets entities to provide management services for the aircraft.  Since the owners each*

*own a share of the same aircraft, a single management services company must be selected to*

*manage the aircraft.*

**ANSWER:**   The United States lacks knowledge or information sufficient to form a belief as to

the truth of the allegations contained in the thirty-first paragraph of the Plaintiffs' complaint.

*32.     Under the management agreement, the NetJets entities agree to provide management*

*services to the fractional owners.  The NetJets entities serve as the fractional owners' agents and*

*receive legal notices from the FAA in that capacity.*

**ANSWER:**  The United States lacks knowledge or information sufficient to form a belief as to

the truth of the allegations contained in the thirty-second  paragraph of the Plaintiffs' complaint.

*33.     Under the master exchange agreement (or dry-lease agreement), owners agree to lease*

*their aircraft to other fractional owners.  A "dry lease" is the lease of an aircraft without crew.*

*This agreement gives a fractional owner whose aircraft is unavailable at a desired time the right*

*to use another fractionally owned aircraft.*

**ANSWER:** The United States admits the allegations contained in the second sentence of the thirty-third paragraph, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the thirty-third paragraph of the Plaintiffs' complaint.

34. *The NetJets entities charge fractional owners several types of fees. First, fractional owners pay a "monthly management fee," which is a fixed monthly fee that covers costs associated with ownership of the aircraft, including insurance, inspection, aircraft hangaring, and scheduling costs. Fractional owners must pay the monthly management fee regardless of whether, and how much, they make use of the aircraft.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the thirty-fourth paragraph of the Plaintiffs' complaint.

35. *Second, fractional owners pay an "occupied hourly fee" for each hour of flight time, which covers the variable costs associated with operating the aircraft (e.g., fuel, oil, lubricants, flight planning, and weather and communications services).*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the thirty-fifth paragraph of the Plaintiffs' complaint.

36. *Third, fractional owners pay a "fuel variable surcharge" that covers the additional costs of fuel that are not included in the occupied hourly fee.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the thirty-sixth paragraph of the Plaintiffs' complaint.

37. *Fourth, fractional owners pay separate charges for miscellaneous actual expenses, such as special catering.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the thirty-seventh paragraph of the Plaintiffs' complaint.

*38.     Unlike a commercial airline or charter passenger, a fractional aircraft owner has the right to fly her own aircraft, or another fractional owner's aircraft under the dry-lease agreement, anywhere she wants to go at any time she wants to travel (subject to airport availability, weather conditions, and the like).*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the thirty-eighth paragraph of the Plaintiffs' complaint.

**LEGAL BACKGROUND**

**A.     The Ticket Tax**

*39.     26 U.S.C. § 4261 imposes an excise tax on payments made for transportation by air. The tax "shall be paid by the person making the payment subject to the tax." 26 U.S.C § 4261 (d). Entities receiving payment for transportation by air - such as commercial airlines and charter companies - are obligated to collect the tax from the purchasers. 26 U.S.C § 4291- These entities are not the taxpayers but rather are the collectors of the tax. However, if the tax is not paid at the time payment for transportation is made (and not otherwise collected), the "tax shall be paid by the carrier providing the initial segment of such transportation." 26 U.S.C. § 4263(c).*

**ANSWER:** The United States admits that 26 U.S.C. § 4261(a) imposes a tax "on the amount paid for taxable transportation," as defined by 26 U.S.C. § 4262. The United States admits that 26 U.S.C. § 4261(d) provides that "[e]xcept as provided in section 4263(a), the taxes imposed by this section shall be paid by the person making the payment subject to the tax." The United

States admits that 26 U.S.C. § 4291 provides that "[e]xcept as otherwise provided in section 4263(c), every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment."  The United States admits that 26 U.S.C. § 4263(c) provides that "[w]here any tax imposed by section 4261 is not paid at the time payment for transportation is made, then, under the regulations prescribed by the Secretary, to the extent that such tax is not collected under any other provision of this subchapter, such tax shall be paid by the carrier providing the initial segment of such transportation which begins or ends in the United States." The United States lacks knowledge or information sufficient to form a response to the truth of the remaining allegations contained in the thirty-ninth paragraph of the Plaintiffs' complaint, except that it denies that entities receiving payments for transportation by air are not taxpayers, to the extent of the applicability of 26 U.S.C. § 4263(c).

40.     *In determining whether the ticket tax applies, the critical factor is bona fide ownership of the aircraft.  If a person owns an aircraft, she is transporting herself each time she flies on the aircraft because she owns the means of transportation, irrespective of whether she pays an agent such as the NetJets entities for aircraft management services.  By contrast, a passenger who buys a ticket for a commercial or charter flight is not transporting herself because she has no ownership or control of the aircraft on which she is traveling.  The only thing that passenger has purchased is the right to be flown (i.e., transported) from point A to point B.*

**ANSWER:**  The United States admits that ownership is a factor considered under the law for determinations of whether an amount paid by a person to a third party is an amount paid for taxable transportation within the meaning of 26 U.S.C. § 4261(a).  The United States admits that

26 U.S.C. § 4261(a) imposes a tax "on the amount paid for taxable transportation," as defined by

26 U.S.C. § 4262. The United States lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in the fortieth paragraph of the Plaintiffs' complaint.

41.     *The IRS expressly recognized ownership of the aircraft as the critical factor in a revenue*

*ruling it issued in 1958, just four years after the ticket tax was enacted. In Revenue Ruling*

*58-215, 1958-1 C.B. 439, the IRS concluded that payments made to an airline management*

*company operating as the agent of an aircraft owner are not subject to the ticket tax. In that*

*ruling, a corporation purchased an aircraft for the purpose of transporting its personnel. The*

*corporation paid an airline company to serve as its agent and to service, maintain, and operate*

*the aircraft. The IRS ruled that because the corporation owned the aircraft and the airline*

*company operated the aircraft as agent for the corporation, the airline company was not*

*providing taxable transportation and the corporation's payments to the airline company were not*

*subject to the ticket tax. Specifically, the IRS stated:*

> *Where a corporation owns an aircraft and appoints an airline company as its*
> *agent to service, maintain, overhaul, and operate such aircraft for the purpose of*
> *transporting the corporation's personnel, the airline company is not furnishing*
> *transportation service to such corporation within the purview of section 4261 of the*
> *Internal Revenue Code of 1954. Therefore, amounts paid for such services are not subject*
> *to the tax on transportation of persons.*

ANSWER: The United States admits that Revenue Ruling 58-215 treats ownership as a factor to

be considered under the law for determinations of whether an amount paid by a person to a third

party is an amount paid for taxable transportation within the meaning of 26 U.S.C. § 4261(a).

The United States admits that the quoted language of Revenue Ruling 58-215 is actually

contained in Revenue Ruling 58-215. With respect to the remaining allegations of the forty-first

paragraph of the Plaintiffs' complaint, the United States avers that Revenue Ruling 58-215 speaks for itself, and lacks knowledge as to whether the non-quoted description of Revenue Ruling 58-215 is a fair and accurate description of Ruling 58-215.

42.     *The IRS has not revoked Revenue Ruling 58-215 or otherwise disavowed its reasoning.*

**ANSWER:** The United States admits the allegations contained in the forty-second paragraph of Plaintiffs' complaint, except to the extent that if the complaint's phrase "or otherwise disavowed its reasoning" is meant to allege that there is no other IRS guidance regarding the applicability of the tax imposed by 26 U.S.C. § 4261(a), then it denies the final five words of the forty-second paragraph of the Plaintiffs' complaint.

**B.      The Federal Circuit's EJA Decision**

43.     *Only one case has been litigated regarding the application of the ticket tax to amounts paid by fractional owners to fractional aircraft management companies: Executive Jet Aviation, Inc. v. United States, 125 F.3d 1463 (Fed. Cir. 1998) ("EJA").  The plaintiff in EJA was Executive Jet Aviation, Inc., the predecessor company to NJA.  In EJA, the Federal Circuit held that the fractional aircraft management company was required to collect and remit the ticket tax on occupied hourly fees it received from the fractional owners of aircraft. The Federal Circuit's decision was based on its conclusion that the agreements reflecting the fractional ownership interests were not bona fide economic arrangements.  Looking to what it thought was the "substance rather than the form," the Federal Circuit agreed with the conclusion of the trial court that Executive Jet Aviation's business was essentially air charter, not true aircraft ownership.  Id.  (citation omitted).  Thus, the court found that Executive Jet Aviation "was in the 'business of transporting persons or property for hire by air.'"  125 F.3d at 1469.*

**ANSWER:** The United States admits that the case of <u>Executive Jet Aviation, Inc., v. United States</u>, 125 F.3d 1463 (Fed. Cir. 1998) ("Executive Jet") is the only case litigated to completion that has addressed the issue of whether amounts paid by fractional-jet program participants to fractional-jet program managers are subject to the tax imposed by 26 U.S.C. § 4261(a). The United States admits that the Federal Circuit ruled in that case that the occupied hourly fees fractional-jet program managers received from fractional-jet program participants were subject to the tax imposed by 26 U.S.C. § 4261(a). The United States admits that the quoted language of <u>Executive Jet</u> is in fact in the <u>Executive Jet</u> opinion. The United States admits that the taxpayer in the <u>Executive Jet</u> case is the predecessor of one or more of the Plaintiffs. With respect to the remaining allegations of the forty-third paragraph of the Plaintiffs' complaint, the United States avers that the <u>Executive Jet</u> opinion speaks for itself, and denies the allegations regarding the opinion to the extent they are not a fair and accurate description of such opinion.

*44.    Although the fractional owner in EJA also paid monthly management fees and fuel variable surcharges, the Government did not take the position that those fees were subject to the ticket tax in that case. See 125 F.3d at 1467,1470.*

**ANSWER:** The United States avers that the imposition of 26 U.S.C. § 4261(a) to monthly management fees and fuel variable surcharges fractional-jet program managers received from fractional-jet program participants was not at issue in the <u>Executive Jet</u> case, and that there was no case or controversy regarding the imposition of the tax imposed under 26 U.S.C. § 4261(a) to such fees, and thus no position to take regarding those fees. To the extent that there are any remaining allegations contained in the forty-fourth paragraph of the Plaintiffs' complaint that have not been responded to by the preceding sentence, the United States lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in the forty-fourth paragraph of the Plaintiffs' complaint.

45.     *EJA was decided at a time when the fractional ownership industry was fledgling and before the FAA promulgated specific regulations to govern fractional aircraft operations. Subsequently adopted regulations of the FAA, the agency to which Congress has granted statutory oversight of air transportation, have rejected the premise upon which EJA was based: these regulations now recognize that fractional ownership arrangements - such as those managed by the NetJets entities - are in fact bona fide economic arrangements.*

**ANSWER:** The United States avers that fractional-jet programs have been in existence since at least 1986.  The United States avers that the Federal Circuit decision in the Executive Jet case was issued on September 18, 1997.  The United States avers the Federal Aviation Administration added subpart K - "Fractional Ownership Operations" to part 91 of title 14 of the Code of Regulations in 2003.  The United States avers that the FAA is responsible for aviation safety, and is not responsible for the administering the provisions of the Internal Revenue Code, including the tax on taxable transportation imposed by 26 U.S.C. § 4261.  The United States denies the remaining allegations in the forty-fifth paragraph of the Plaintiffs' complaint.

**C.     The FAA Promulgated New Federal Aviation Regulations That Eliminated The Premise Of The EJA Decision**

46.     *In 2003, the FAA promulgated new Federal Aviation Regulations ("FARs") to regulate the fractional ownership industry.  Before that time, there were no regulations that specifically addressed fractional ownership. The new FARs recognize that fractional ownership is a bona*

*fide economic arrangement and that management companies play an essential role in facilitating this form of ownership.*

ANSWER: The United States denies the allegations contained in the third sentence of the forty-sixth paragraph of Plaintiffs' complaint, and admits the remaining allegations contained in the forty-sixth paragraph of Plaintiffs' complaint.

47.     *The FARs define fractional ownership in order to ensure that fractional ownership arrangements are extended only to bona fide owners, and that chartering services will not qualify.  The purpose of the minimum fractional ownership interest under the FARs is "to prevent potential abuse by persons who might try to offer air charter transportation under the guise of a fractional ownership program." Preamble to FARs, 66 Fed. Reg. 37520, 37525 (2001).*

**ANSWER:** The United States admits that language from the Preamble to the FARs is correctly quoted above in the forty-seventh paragraph of Plaintiffs' complaint, and that the Preamble explains that a core reason for defining a minimum fractional ownership interest is to prevent potential abuse, and denies the remaining allegations contained in the forty-seventh paragraph of Plaintiffs' complaint.  The United States avers that the purpose for defining a minimum fractional ownership interest under the FARs is because of the risk that "aviation safety would be compromised if persons were permitted to offer what would amount to air charter services ..., thereby evading the important safety and supervision requirements ... applicable to such service. *Preamble to FARs, 66 Fed. Reg. 37520, 37525 (2001).*

48.     *The FARs define a "fractional ownership interest" as "ownership of an interest or holding of a multi-year leasehold interest ... in a program aircraft." 14 C.F.R. § 91.1001(b)(4).*

*They define minimum fractional ownership interests as either a 1/16th interest in "one subsonic,*

*fixed-wing or powered-lift program aircraft" or a 1/32nd interest in "one rotorcraft program*

*aircraft." Id.*

**ANSWER:** The United States admits that the definition of "fractional ownership interest" and

"minimum fractional ownership interest" in the FARs is correctly quoted above in the forty-

eighth paragraph of Plaintiffs' complaint.

*49.     The new FARs also require fractional owners to enter into many of the contracts that the*

*NetJets entities have long used. For example, the FARs require fractional owners to enter into a*

*management agreement with a program manager and require that the agreement "[d]esignate[]*

*the program manager as the owner's agent to receive service of notices pertaining to the*

*program that the FAA seeks to provide to owners .... " 14 C.F.R. § 91.1003. The FARs also*

*require fractional owners to enter into an aircraft exchange agreement - i.e., an interchange or*

*dry-lease agreement - with other program participants. See 14 C.F .R. § 91.1001 (b)( 5)(v).*

**ANSWER:** The United States admits that the new FARs require program participants in

Plaintiffs' fractional-jet enterprises into a management agreement and aircraft exchange

agreement, but lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in the forty-ninth paragraph of Plaintiffs' complaint.

*50.     The FAA expressly recognized that fractional ownership is a bona fide form of aircraft*

*ownership that is fundamentally different than either commercial or charter air travel:*

> *[F]ractional owners flying aboard fractionally-owned aircraft*
> *contractually acknowledge substantial control over and bear substantial*
> *responsibility for the airworthiness and operation of their aircraft. Like whole*
> *aircraft owners, fractional owners can initiate, conduct, redirect and terminate a*
> *flight.. .. Additionally, ... both fractional owners and whole aircraft owners have*

*other shared characteristics that relate at least in part to safety: (1) They conduct research so that they can be assured that they will select the right aircraft and realize an adequate return from their capital investment; (2) they possess an interest in an aircraft acquired through a significant capital investment; (3) they purchase aviation expertise for the purpose of managing, maintaining or otherwise aiding the operation of the aircraft they operate under part 91, including the option to select flight crews; and (4) they bear the risk of loss or damage to the aircraft and the risk of diminution of value of the aircraft. On-demand charter passengers, on the other hand, do not assume any of these risks and responsibilities nor do they have any significant financial investment in the chartered aircraft.*

*[F]ractional owners flying aboard fractionally-owned and operated aircraft share more of their regulatory characteristics with the owners of non-commercially operated aircraft than with passengers using on-demand operators ....*

*[Preamble to FARs, 66 Fed. Reg. 37520, 37522 (2001)]*

**ANSWER:** The United States admits that the passages included in the fiftieth paragraph of the Plaintiffs' complaint from the Preamble to the FARs are correctly quoted, and denies the remaining allegations contained in the fiftieth paragraph of the Plaintiffs' complaint.

*51.     These new FARs eviscerate the fundamental premise of the Federal Circuit's EJA decision. While the court in EJA held that fractional ownership was not a bona fide economic arrangement, the new FARs - which have the effect of law - expressly recognize fractional ownership as a bona fide form of ownership, and also require that fractional owners enter into the very management and dry-lease agreements that fractional owners enter into with the NetJets entities. And while the court in EJA also held that fractional ownership arrangements were nothing more than an exclusive charter business, the FAA now has expressly recognized that this is not true; that management of fractionally owned aircraft is not a charter business. Simply stated, the FAA's adoption of the new FARs in 2003 means that EJA is no longer good law.*

**ANSWER:** The United States denies the allegations contained in paragraph fifty-one of the Plaintiffs' complaint.

**D.** **The IRS Failed To Provide Clear Guidance To The Aircraft Management Industry As To The Types Of Fees To Which The IRS Intends To Apply The Ticket Tax**

52. *As set forth above, Plaintiffs are not primarily liable for payment of the ticket taxes at issue in this case. Rather, the IRS seeks to hold Plaintiffs secondarily liable for payment of these taxes on the ground that the primary taxpayers - the owners who paid the fees upon which the IRS assessed the ticket tax - did not pay the tax at the time they paid the fees. But in order to hold Plaintiffs secondarily liable for payment of the ticket tax, the IRS must have given Plaintiffs "precise and not speculative" notice of the duty to collect the tax with respect to each of the types of fees that are now part of the IRS's assessment. Central Illinois Public Service Co. v. United States, 435 U.S. 21, 31 (1978). With respect to the monthly management fee and fuel variable surcharge, the IRS never gave such advance notice to Plaintiffs.*

**ANSWER:** The United States admits that 26 U.S.C. § 4261(a) imposes a tax upon all taxable transportation, as defined by 26 U.S.C. § 4262. The United States admits that 26 U.S.C. § 4261(d) provides that "[e]xcept as provided in section 4263(a), the taxes imposed by this section shall be paid by the person making the payment subject to the tax." The United States admits that 26 U.S.C. § 4291 provides that "[e]xcept as otherwise provided in section 4263(a), every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment." The United States admits that 26 U.S.C. § 4263(c) provides that "[w]here any tax imposed by section 4261 is not paid at the time payment for transportation is made, then, under

the regulations prescribed by the Secretary, to the extent that such tax is not collected under any other provision of this subchapter, such tax shall be paid by the carrier providing the initial segment of such transportation which begins or ends in the United States." The United States admits that it has made assessments of certain taxes involved in this lawsuit, including the imposition of the § 4261(a) tax upon the monthly-management fees, pursuant to 26 U.S.C. § 4263(c), but lacks knowledge or information sufficient to form a belief as to whether all of the taxes involved in this lawsuit have been assessed pursuant to § 4263(c), as opposed to § 4261(d). The United States admits that the Supreme Court decision of <u>Central Illinois Public Service Co. v. United States</u> is published at 435 U.S. 21 (1978), but lacks knowledge or information sufficient to form a belief as to the extent of that case's reasoning to the instant case. The United States avers that there is sufficient guidance regarding the duty of a collector to report and pay over the tax imposed by 26 U.S.C. § 4261. The United States lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in the fifty-second paragraph of the Plaintiffs' complaint.

53.     *In the EJA litigation, the Government did not seek to assess the ticket tax against either the monthly management fees or fuel variable surcharges; rather, it assessed the ticket tax only on the occupied hourly fees paid to Executive Jet Aviation. The trial court in EJA expressly commented on the Government's limited application of the ticket tax, concluding that it must be the IRS's "current stipulation as to the proper measure of the [ticket] tax" that it applies only to occupied hourly fees:*

> *It is unclear ... why the IRS did not treat any part of the management fee ... as an amount paid for taxable transportation and thus subject for the § 4261 tax. Whether this stipulation is as to the historical agreement only, or whether it*

*represents the government's current stipulation as to the proper measure of the tax also is unclear. Since no offset has been pleaded, the court assumes the latter is the case.*

*[No. 95-7T, slip op., pp. 5-6 (Ct. Fed. Cl., Mar. 29, 1996)]*

**ANSWER:** The United States avers that the imposition of 26 U.S.C. § 4261 to monthly management fees and fuel variable surcharges was not at issue in the Executive Jet case, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the fifty-third paragraph of the Plaintiffs' complaint.

*54.     For several years following EJA, the IRS did not assess the ticket tax on any fees paid to fractional aircraft management companies, other than the occupied hourly fees.  In fact, after EJA, the IRS audited another fractional management company and conceded that the ticket tax should not apply to monthly management fees for a tax period covering 42 quarters, some of which overlap with the tax periods at issue here.*

**ANSWER:** The United States is precluded by 26 U.S.C. § 6103 from responding to the allegations asserted with respect to other taxpayers.

*55.     After EJA, the IRS issued a private letter ruling to another fractional aircraft management company in which the IRS expressed the view that the ticket tax also applied to monthly management fees paid to a fractional aircraft management company.  See T.A.M. 2004-25-048 (February 17, 2004).  However, upon information and belief, the IRS Appeals division later conceded the issue with respect to that company and did not apply the ticket tax to the monthly management fees.*

**ANSWER:** The United States admits that the IRS issued a private letter ruling to a fractional

aircraft management company, but is precluded by 26 U.S.C. § 6103 from responding to the

allegation regarding the outcome of the examination of another fractional management company.

56.     *Following the EJA decision, based on the Government's litigation position in that case*

*and the absence of other guidance, those in the fractional aircraft management industry*

*reasonably concluded that the Government did not believe the ticket tax applied to fractional*

*aircraft management fees other than the occupied hourly fees.  Plaintiffs certainly never received*

*"precise" notice that the IRS intended to apply the ticket tax to monthly management fees and*

*fuel variable surcharges.  As a result, Plaintiffs never collected the ticket tax on either of those*

*fees and are now confronted, years later, with a massive tax liability.*

**ANSWER:** The United States denies the truth of the allegations contained in the first and second

sentence of the fifty-sixth paragraph of the Plaintiffs' complaint and lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in the

third sentence of the fifty-sixth paragraph of the Plaintiffs' complaint.

### THE IRS'S TICKET TAX ASSESSMENTS AGAINST PLAINTIFFS

57.     *In 2007 - well after the FARs  adopted in 2003 demonstrated that the ticket tax is not*

*properly assessed against any fees charged by Plaintiffs for their services - the IRS adopted the*

*view that Plaintiffs were obligated to collect and remit the ticket tax not only for occupied hourly*

*fees, but for monthly management fees and fuel variable surcharges as well.  In 2010, the*

*Examination Division of the IRS therefore proposed an assessment of the ticket tax on the*

*monthly management fees and fuel variable surcharges for the tax periods between January 1,*

*2005 and June 30, 2009 for NJA; between October 1, 2003 and June 30, 2009 for NJLA;*

*between April 1, 2005 and June 30, 2009 for NJI; and between April 1, 2005 and June 30, 2009*

*for EJM. The IRS also imposed penalties and interest on each of these assessments.*

**ANSWER:** The United States admits that, in 2010, the Examination Division of the IRS

proposed assessments, along with penalties and interest on each of these assessments, of the tax

imposed by 26 U.S.C. § 4261(a) on the monthly management fees and fuel variable surcharges

for the tax periods and for the entities set forth above in paragraph fifty-seven of Plaintiffs'

complaint. The United States lacks knowledge or information sufficient to a belief as to the truth

of the allegation whether the IRS adopted such a view in 2007, and denies that the 2003 adoption

of the FARs demonstrates that the tax imposed by 26 U.S.C. § 4261(a) is not properly assessed

against any fees charged by Plaintiffs for their services. The United States denies any remaining

allegations contained in the fifty-seventh paragraph of the Plaintiffs' complaint.

58.     *On March 19, 2010, EJM and the NetJets entities filed protests with the IRS requesting*

*the Appeals Office's review of the Examination Division's proposed assessments. The protests*

*were denied, and following a conference with the Appeals Office, the IRS issued Statements of*

*Adjustment.*

**ANSWER:** The United States admits the allegations contained in the fifty-eighth paragraph of

the Plaintiffs' complaint.

59.     *The Statements of Adjustment assessed the following amounts for the ticket tax, interest*

*and penalties:*

> a.      *NJLA: $1,173,722 in total taxes owed; $232,241.41 in penalties;*
>
> *$360,034.62 in interest; and $1,765,998.03 in total amount assessed. See*
>
> *Ex. 1 (NJLA Form 720 Summary of Assessment and Divisible Taxes Paid).*

b.    *NJA: $287,000,250 in total taxes owed; $60,535,928.16 in interest (plus*

*$9,625.20 for interest previously allowed); and $347,545,803.36 in total*

*amount assessed. See Ex. 2 (NJA Form 720 Summary of Assessment and*

*Divisible Taxes Paid).*

c.    *NJI: $51,523,110 in total taxes owed; $11,079,106.79 in interest (plus*

*$3,877.90 for interest previously allowed); and $62,606,094.69 in total*

*amount assessed. See Ex. 3 (NJI Form 720 Summary of Assessment and*

*Divisible Taxes Paid).*

d.    *EJM: $9,745,065 in total taxes owed; $2,170,915.39 in interest (plus*

*$3,900.42 for interest previously allowed); and $11,919,880.81 in total*

*amount assessed. See Ex. 4 (EJM Form 720 Summary of Assessment and*

*Divisible Taxes Paid)[2].*

**ANSWER:** The United States admits that additional assessments of the tax imposed by 26

U.S.C. § 4261(a) were made following the IRS examination.

60.    *Plaintiffs paid divisible portions of the assessments for the particular types of fees for*

*which they had not collected the ticket tax, and then filed refund claims with the IRS for those*

*divisible portions as well as the amount of taxes collected on the occupied hourly fees for the*

---

[2]    *The figures set forth in Paragraph 59 represent the amounts of uncollected ticket taxes the IRS has assessed against Plaintiffs. In addition to those amounts, the NetJets entities collected and remitted $218,868,343 in ticket taxes on occupied hourly fees for the tax periods at issue.*

*period in question.[3] See Ex's. 5, 6, 7, and 8. The IRS denied Plaintiffs' refund claims. See Ex's. 9 - 12.*

**ANSWER:** The United States admits the allegations contained in the sixtieth paragraph of the Plaintiffs' complaint.

**CLAIMS FOR RELIEF**
**Count I-Refund for Federal Excise**
**Taxes Paid on Occupied Hourly Fees**
**(plaintiffs NJA, NJI and NJLA)**

*61.     Plaintiffs NJA, NJI and NJLA incorporate by reference paragraphs 1 through 60 as if fully set forth herein.*

**ANSWER:** The United States incorporates its responses to paragraphs 1 through 60, above, as though more fully set forth herein.

*62.     The management services provided by NJA, NJI and NJLA facilitate aircraft owners' travel, but do not constitute the provision of travel itself. The ticket tax in 26 U.S.C. § 4261 therefore does not apply to the occupied hourly fees these Plaintiffs receive for their management services, and they should not have to collect this tax from the aircraft owners who pay the fee.*

**ANSWER:** The United States denies the allegations contained in the sixty-second paragraph of the Plaintiffs' complaint.

---

[3]     *Excise taxes like the ticket tax are divisible into individual transactions and are therefore not subject to the rule that requires full payment of a tax assessment before bringing suit for refund. Instead, a refund action requires only full payment of tax with respect to one transaction. See, e.g., Flora v. United States, 362 U.S. 145, 175 n.37 (1960). The divisible portions of the assessed ticket taxes that were paid by EJM and the NetJets entities are set forth on Exhibits 1 through 4, which are attached.*

*63.     NJA and NJI paid the full amounts of the ticket taxes that the IRS unlawfully assessed against them.  NJLA has paid the full amount of the ticket tax that the IRS unlawfully assessed against it for the period from the quarter ended March 2008 through the quarter ended June 2009 and the divisible portion of the tax for the remaining applicable tax periods.  In addition, NJA, NJI, and NJLA have all exhausted their refund claims before the IRS.  They are now entitled to a refund of those payments pursuant to 28 U.S.C. § 1346(a)(1).*

**ANSWER:** The United States denies that the IRS unlawfully assessed the ticket taxes against any of these entities and that these entities are entitled to a refund of any payments towards the IRS assessments, and admits the remaining allegations contained in paragraph sixty-three of the Plaintiffs' complaint.

*64.     NJLA also is entitled to the abatement of the unpaid assessment, interest, and penalties for the tax quarters for which it paid only the divisible portion of the ticket tax on the occupied hourly fees.*

**ANSWER:**  The United States denies the allegations contained in the sixty-fourth paragraph in the Plaintiffs' complaint.

*65.     Before any refund is paid with respect to the ticket tax collected on occupied hourly fees, NJA, NJI and NJLA will satisfy the statutory requirements under 26 U.S.C. § 6415(a) and will either repay the amount of tax collected from owners to those owners or will obtain consent from owners.*

**ANSWER:** The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the sixty-fifth paragraph of the Plaintiffs' complaint.

**Count II-Refund for Federal Excise**
**Taxes Paid on Monthly Management Fees**
**(Plaintiffs NJA, NJI, NJLA and EJM)**

66.     *Plaintiffs incorporate by reference paragraphs 1 through 65 as if fully set forth herein.*

**ANSWER:**  The United States incorporates its responses to paragraphs 1 through 65, above, as though more fully set forth herein.

67.     *The IRS illegally assessed the ticket tax against the monthly management fees that Plaintiffs receive for their management services.  Plaintiffs' management services facilitate aircraft owners' travel, but do not constitute the provision of travel itself. The ticket tax in 26 U.S.C. § 4261 therefore does not apply to the monthly management fees Plaintiffs receive for their management services, and Plaintiffs should not have to collect this tax from the aircraft owners who pay the fee.*

**ANSWER:**  The United States denies the allegations contained in the sixty-seventh paragraph in the Plaintiffs' complaint.

68.     *Plaintiffs paid the divisible portion of these illegal taxes, exhausted their claims before the IRS, and are now entitled to a refund of those payments pursuant to 28 U.S.C. § 1346(a)(1) plus statutory interest as provided by law.  Plaintiffs also are entitled to abatement of the unpaid assessment, interest, and penalties.*

**ANSWER:** The United States denies the allegations contained in the sixty-eighth paragraph of the Plaintiffs' complaint.

### Count III-Refund for Federal Excise
### Taxes Paid on Fuel Variable Surcharge
### (plaintiffs NJA, NJI and NJLA)

69.     *Plaintiffs NJA, NJI and NJLA incorporate by reference paragraphs 1 through 68 as if fully set forth herein.*

**ANSWER:** The United States incorporates its responses to paragraphs 1 through 68, above, as though more fully set forth herein.

70.     *The IRS illegally assessed the ticket tax against the fuel variable surcharges that NJA, NJI and NJLA receive for defraying the costs of fuel that are not already covered by the monthly management fee or occupied hourly fee. This service of defraying the costs of fuel facilitates aircraft owners' travel, but does not constitute the provision of travel itself. The ticket tax in 26 U.S.C. § 4261 therefore does not apply to the fuel variable surcharges that NJA, NJI and NJLA receive, and these Plaintiffs should not have to collect this tax from the aircraft owners who pay the surcharges.*

**ANSWER:** The United States denies the allegations contained in the seventieth paragraph of the Plaintiffs' complaint.

71.     *NJA, NJI and NJLA paid the divisible portion of these illegal taxes, exhausted their claims before the IRS, and are now entitled to a refund of those payments pursuant to 28 U.S.C. § 1346(a)(l) plus statutory interest as provided by law. NJA, NJI and NJLA are also entitled to abatement of the unpaid assessment, interest, and penalties.*

**ANSWER:** The United States denies the allegations contained in the seventy-first paragraph of the Plaintiffs' complaint.

## Count IV-Refund for Federal Excise
## Taxes Paid on Pass-Through Costs
### (Plaintiff EJM)

72.　*Plaintiff EJM incorporates by reference paragraphs 1 through 71 as if fully set forth herein.*

**ANSWER:**  The United States incorporates its responses to paragraphs 1 through 71, above, as though more fully set forth herein.

73.　*The IRS illegally assessed the ticket tax against the miscellaneous pass-through costs that EJM receives for its services.  EJM's management services facilitate aircraft owners' travel, but do not constitute the provision of travel itself.  The ticket tax in 26 U.S.C. § 4261 therefore does not apply to the pass-through costs that EJM receives for its management services, and EJM should not have to collect this tax from the aircraft owners who pay them.*

**ANSWER:**  The United States denies the allegations contained in the seventy-third paragraph of the Plaintiffs' complaint.

74.　*EJM paid the divisible portion of these illegal taxes, exhausted its claims before the IRS, and is now entitled to a refund of those payments pursuant to 28 U.S.C. § 1346(a)(1) plus statutory interest as provided by law.  EJM also is entitled to abatement of the unpaid assessment, interest, and penalties.*

**ANSWER:**  The United States denies the allegations contained in the seventy-fourth paragraph of the Plaintiffs' complaint.

## Count V-Retroactive Secondary
## Liability without Adequate Notice
### (plaintiffs NJA, NJI, NJLA and EJM)

75.　*Plaintiffs incorporate by reference paragraphs 1 through 74 as if fully set forth herein.*

**ANSWER:** The United States incorporates its responses to paragraphs 1 through 74, above, as though more fully set forth herein.

76.     *Under the standard set forth in Central Illinois Public Service Co. v. United States, a party "in a secondary position as to liability for any tax" should be given notice of the duty to collect the tax that is "precise and not speculative." 435 U.S. 21, 31 (1978).*

**ANSWER:** The United States admits that the Supreme Court decision of <u>Central Illinois Public Service Co. v. United States</u> is contained at 435 U.S. 21 (1978), but lacks knowledge or information sufficient to form a belief as to the extent of that case's reasoning to the instant case. The United States thus lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the seventy-sixth paragraph of the Plaintiffs' complaint.

77.     *The IRS failed to provide Plaintiffs with clear guidance that it intended to apply the ticket tax to the monthly management fees and the fuel variable surcharges received by Plaintiffs for their services.*

**ANSWER:** The United States denies the allegations contained in the seventy-seventh paragraph of the Plaintiffs' complaint.

78.     *Accordingly, the IRS cannot impose retroactive secondary liability on Plaintiffs for the monthly management fees and fuel variable surcharges already collected, even if the ticket tax were properly applied prospectively to those fees (which it is not).*

**ANSWER:** The United States denies the allegations contained in the seventy-eighth paragraph of the Plaintiffs' complaint.

**Count VI-Unequal Treatment**
**(plaintiffs NJA, NJI, NJLA and EJM)**

79.    *Plaintiffs incorporate by reference paragraphs 1 through 78 as if fully set forth herein.*

**ANSWER:**  The United States incorporates its responses to paragraphs 1 through 78, above, as though more fully set forth herein.

80.     *The IRS has a duty to treat similarly situated taxpayers in a consistent manner.  See, e.g., Sirbo Holdings, Inc. v. C.I.R., 476 F.2d 981, 987 (2d Cir. 1973).  This duty applies regardless of whether the IRS is aware of or intends the inconsistency: "That the Commissioner's seeming inconsistency may have arisen from the right hand's ignorance of the posture of the left is little solace to taxpayers who are entitled to a non-discriminatory administration of the tax laws."  Id.*

**ANSWER:** The United States admits that the IRS has a duty to treat similarly-situated taxpayers in a consistent manner, and admits that the quote from the *Sirbo Holdings* case is correctly quoted.  The United States avers that the *Sirbo Holdings* court also stated:

> While even-handed treatment should be the Commissioner's goal, *cf. International Business Machines Corp. v. United States*, 343 F.2d 914, 170 Ct.Cl. 357 (1965), *cert. denied*, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), perfection in the administration of such vast responsibilities cannot be expected.  *See* Davis, ADMINISTRATIVE LAW TREATISE § 17.07, at 600 (1970 Supp.).  The making of an error in one case, if error it was, gives other taxpayers no right to its perpetuation. *See Wagner v. United States*, 387 F.2d 966, 968, 181 Ct.Cl. 807 (1967). Cf. Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (concurring opinion of Mr. Justice Frankfurter).

*Sirbo Holdings*, 509 F.2d, at 1221-22 [footnotes omitted]; *see also Hostar Marine Transport Systems, Inc.*, 592 F.3d 202, 208-10 (1st Cir. 2010).

81.     *The IRS has failed to meet its duty of treating Plaintiffs and its similarly situated business competitors in a consistent manner.  During the quarters in which the IRS has assessed the ticket*

*tax on Plaintiffs, some fractional aircraft management companies were not assessed the ticket tax on monthly management fees and other fees received. Plaintiffs would be placed at a severe competitive disadvantage if the ticket tax is imposed on fees received by them in periods when its competitors are not subject to the ticket tax on similar fees.*

**ANSWER:** The United States denies the allegations contained in the first and third sentences of the eighty-first paragraph of the Plaintiffs' complaint, and is precluded by 26 U.S.C. § 6103 from responding to the allegation that it did not assess the tax imposed by 26 U.S.C. § 4261(a) to monthly management fees and other fees received against some other fractional aircraft management companies.

*82.      This Court therefore should order the refund of the divisible portions of the federal excise tax paid by Plaintiffs for the monthly management fee and fuel variable surcharges plus statutory interest as provided by law, and order the abatement of the unpaid assessment, interest and penalties.*

**ANSWER:** The United States denied the allegations contained in the eighty-second paragraph of the Plaintiffs' complaint.

# COUNTERCLAIMS

The United States of America, by its undersigned attorney, pursuant to the provisions of

26 U.S.C. §§ 7401(a) and 7402 at the direction of a delegate of the Attorney General and with the

authorization of a delegate of the Secretary of the Treasury, states its counterclaims against

NetJets Large Aircraft, Inc., NetJets International, Inc., NetJets Aviation, Inc., and Executive Jet

Management, Inc., as follows:

**Count 1: Reduce Assessments Against NetJets Large Aircraft, Inc., to Judgment**

1.      This counterclaim has been brought pursuant to Rule 13 of the Federal Rules of

Civil Procedure against NetJets Large Aircraft, Inc.

2.      Jurisdiction over this action is conferred upon this Court under 28 U.S.C.

§§ 1331, 1340, 1345, and 1346(c), and 26 U.S.C. § 7402.

3.      NetJets Large Aircraft, Inc. has its principal place of business in Columbus, Ohio.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5.      Except where indicated in the table below, on May 9, 2011, a delegate of the

Secretary of the Treasury made assessments against NetJets Large Aircraft, Inc., for federal

excise taxes under 26 U.S.C. § 4261 and/or penalties under 26 U.S.C. § 6651(a)(2), for the

following tax periods, in the amounts listed below:

| Period Ending | § 4261 Tax Assessed | § 6651(a)(2) Penalty Assessed | Date of Assessment if Different From May 9, 2011 |
|---|---|---|---|
| Dec. 31, 2003 | $         18,429.00 | $         4,607.25 | |
| March 31, 2004 | $         48,929.00 | $         12,232.25 | |
| June 30, 2004 | $         55,080.00 | $         13,770.00 | |

| | | | | | |
|---|---|---|---|---|---|
| Sept. 30, 2004 | $ | 80,624.00 | $ | 20,156.00 | |
| Dec. 31, 2004 | $ | 67,707.00 | $ | 16,929.75 | |
| March 31, 2005 | $ | 90,622.00 | $ | 22,655.50 | |
| June 30, 2005 | $ | 90,122.00 | $ | 22,530.50 | |
| Sept. 30, 2004 | $ | 79,398.00 | $ | 19,849.50 | |
| Dec. 31, 2005 | $ | 29,841.00 | $ | 7,460.25 | |
| March 31, 2006 | $ | 61,718.00 | $ | 15,429.50 | |
| June 30, 2006 | $ | 54,769.00 | $ | 13,692.25 | |
| Sept. 30, 2006 | $ | 32,813.00 | $ | 8,203.25 | |
| Dec. 31, 2006 | $ | 26,113.00 | $ | 6,528.25 | |
| March 31, 2007 | $ | 84,042.00 | $ | 19,749.87 | |
| March 31, 2007 | | | $ | 1,163.42 | Oct. 31, 2011 |
| June 30, 2007 | $ | 45,462.00 | $ | 10,456.26 | |
| June 30, 2007 | | | $ | 640.03 | Oct. 31, 2011 |
| Sept. 30, 2007 | $ | 49,909.00 | $ | 10,730.43 | |
| Sept. 30, 2007 | | | $ | 1,433.61 | Oct. 31, 2011 |
| Dec. 31, 2007 | $ | 36,318.00 | $ | 7,263.60 | |
| Dec. 31, 2007 | | | $ | 1,041.55 | Oct. 31, 2011 |
| March 31, 2008 | $ | 41,183.00 | $ | 1,527.69 | Oct. 31, 2011 |
| June 30, 2008 | $ | 38,847.00 | $ | 1,440.24 | Oct. 31, 2011 |
| Sept. 30, 2008 | $ | 53,680.00 | $ | 2,107.72 | Oct. 31, 2011 |
| Dec. 31, 2008 | $ | 44,250.00 | $ | 1,683.37 | Oct. 31, 2011 |
| March 31, 2009 | $ | 26,225.00 | $ | 864.55 | Oct. 31, 2011 |
| June 30, 2009 | $ | 17,641.00 | $ | 474.42 | Oct. 31, 2011 |

6.     A delegate of the Secretary of the Treasury of the United States of America has given notice of the assessments to and made a demand for payment of the assessments described in paragraph five, above, upon NetJets Large Aircraft, Inc.

7.     NetJets Large Aircraft, Inc., has failed, neglected, or refused to pay its federal tax liabilities for the assessments described in paragraph 5, above, in full and, after the application of all abatements, payments and credits, it remains indebted to the United States of America for unpaid federal excise taxes and assessed penalties in the amount of $1,192,027.44, plus interest or other accruals that may have accrued after the dates of assessments, or may continue to accrue as provided by law.

**Count 2: Reduce Assessments Against NetJets International, Inc., to Judgment**

8.     This counterclaim has been brought pursuant to Rule 13 of the Federal Rules of Civil Procedure against NetJets International, Inc.

9.     Jurisdiction over this action is conferred upon this Court under 28 U.S.C. §§ 1331, 1340, 1345, and 1346(c), and 26 U.S.C. § 7402.

10.     NetJets International, Inc., has its principal place of business in Columbus, Ohio.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12.     As indicated in the table below, on May 9, 2011, a delegate of the Secretary of the Treasury made assessments against NetJets International, Inc., for federal excise taxes under 26 U.S.C. § 4261, and on October 24, 2011, a delegate of the Secretary of the Treasury made assessments against NetJets International, Inc., of penalties under 26 U.S.C. § 6651(a)(2), for the following tax periods, in the amounts listed below:

| Period Ending | § 4261 Tax Assessed | § 6651(a)(2) Penalty Assessed |
|---|---|---|
| June 30, 2005 | $ 2,123,995.00 | $ 63,615.17 |
| Sept. 30, 2004 | $ 2,201,724.00 | $ 65,970.39 |
| Dec. 31, 2005 | $ 2,795,540.00 | $ 83,745.90 |
| March 31, 2006 | $ 2,002,065.00 | $ 59,959.62 |
| June 30, 2006 | $ 2,687,996.00 | $ 80,237.24 |
| Sept. 30, 2006 | $ 2,918,661.00 | $ 87,434.25 |
| Dec. 31, 2006 | $ 2,744,591.00 | $ 68,504.83 |
| March 31, 2007 | $ 2,942,474.00 | $ 88,135.14 |
| June 30, 2007 | $ 3,037,149.00 | $ 91,002.58 |
| Sept. 30, 2007 | $ 3,176,342.00 | $ 95,238.54 |
| Dec. 31, 2007 | $ 3,583,121.00 | $ 107,366.67 |
| March 31, 2008 | $ 4,053,414.00 | $ 121,473.06 |
| June 30, 2008 | $ 4,338,123.00 | $ 129,956.43 |
| Sept. 30, 2008 | $ 4,097,143.00 | $ 122,801.94 |
| Dec. 31, 2008 | $ 3,339,982.00 | $ 83,376.79 |
| March 31, 2009 | $ 2,822,440.00 | $ 84,527.31 |
| June 30, 2009 | $ 2,658,350.00 | $ 79,623.82 |

13.    A delegate of the Secretary of the Treasury of the United States of America has given notice of the assessments to and made a demand for payment of the assessments described in paragraph twelve, above, upon NetJets International, Inc.,

14.    NetJets International, Inc., has failed, neglected, or refused to pay its federal tax liabilities for the assessments described in paragraph twelve, above, in full and, after the application of all abatements, payments and credits, it remains indebted to the United States of

America for unpaid federal excise taxes and assessed penalties in the amount of $52,963,609.46, plus interest or other accruals that may have accrued after the dates of assessments, or may continue to accrue as provided by law.

### Count 3: Reduce Assessments Against NetJets Aviation, Inc., to Judgment

15. This counterclaim has been brought pursuant to Rule 13 of the Federal Rules of Civil Procedure against NetJets Aviation, Inc.

16. Jurisdiction over this action is conferred upon this Court under 28 U.S.C. §§ 1331, 1340, 1345, and 1346(c), and 26 U.S.C. § 7402.

17. NetJets Aviation, Inc., has its principal place of business in Columbus, Ohio.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

19. Except as indicated in the table below, on May 2, 2011, a delegate of the Secretary of the Treasury made assessments against NetJets Avaiation, Inc., for federal excise taxes under 26 U.S.C. § 4261, and on October 31, 2011, a delegate of the Secretary of the Treasury made assessments against NetJets Aviation, Inc., of penalties under 26 U.S.C. § 6651(a)(2), for the following tax periods, in the amounts listed below:

| Period Ending | § 4261 Tax Assessed | § 6651(a)(2) Penalty Assessed |
|---|---|---|
| June 30, 2005 | $ 11,029,699.00 | $ 592,909.29 |
| Sept. 30, 2004 | $ 11,501,833.00 | $ 632,448.20 |
| Dec. 31, 2005 | $ 13,156,901.00 | $ 723,498.74 |
| March 31, 2006 | $ 14,118,822.00 | $ 776,368.43 |
| June 30, 2006 | $ 14,352,365.00 | $ 789,224.82 |
| Sept. 30, 2006 | $ 14,642,689.00 | $ 805,213.87 |

| Dec. 31, 2006 | $ | 14,966,454.00 | $ | 822,998.74 |
|---|---|---|---|---|
| March 31, 2007 | $ | 16,121,903.00 | $ | 886,540.75 |
| June 30, 2007 | $ | 16,756,660.00 | $ | 921,452.45 |
| Sept. 30, 2007 | $ | 17,210,343.00 | $ | 946,441.25 |
| Dec. 31, 2007 | $ | 18,883,334.00 | $ | 1,035,655.47 |
| March 31, 2008 | $ | 20,776,065.00 | $ | 1,142,457.57 |
| June 30, 2008 | $ | 21,599,350.00 | $ | 1,187,646.84 |
| Sept. 30, 2008 | $ | 21,448,177.00[4] | $ | 536,236.75 |
| Dec. 31, 2008 | $ | 18,475,372.00 | $ | 1,016,226.78 |
| March 31, 2009 | $ | 15,559,392.00 | $ | 855,587.97 |
| June 30, 2009 | $ | 14,452,745.00 | $ | 794,697.17 |

20.     A delegate of the Secretary of the Treasury of the United States of America has given notice of the assessments to and made a demand for payment of the assessments described in paragraph nineteen, above, upon NetJets Aviation, Inc.

21.     NetJets Aviation, Inc., has failed, neglected, or refused to pay its federal tax liabilities for the assessments described in paragraph nineteen, above, in full and, after the application of all abatements, payments and credits, it remains indebted to the United States of America for unpaid federal excise taxes and assessed penalties in the amount of $302,111,572.76, plus interest or other accruals that may have accrued after the dates of assessments, or may continue to accrue as provided by law.

**Count 4: Reduce Assessments Against Executive Jet Management, Inc., to Judgment**

22.     This counterclaim has been brought pursuant to Rule 13 of the Federal Rules of

---

[4]     The tax for this period only was assessed on May 16, 2011.

Civil Procedure against Executive Jet Management, Inc.

23.     Jurisdiction over this action is conferred upon this Court under 28 U.S.C.

§§ 1331, 1340, 1345, and 1346(c), and 26 U.S.C. § 7402.

24.     Executive Jet Management, Inc., has its principal place of business in Columbus,

Ohio.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

26.     As indicated in the table below, on May 2, 2011, a delegate of the Secretary of the

Treasury made assessments against Executive Jet Management, Inc., for federal excise taxes

under 26 U.S.C. § 4261, and on November 7, 2011, a delegate of the Secretary of the Treasury

made assessments against Executive Jet Management, Inc., of penalties under 26 U.S.C.

§ 6651(a)(2), for the following tax periods, in the amounts listed below:

| Period Ending | § 4261 Tax Assessed | § 6651(a)(2) Penalty Assessed |
|---|---|---|
| June 30, 2005 | $ 593,722.00 | $ 31,919.79 |
| Sept. 30, 2004 | $ 527,023.00 | $ 28,317.37 |
| Dec. 31, 2005 | $ 580,598.00 | $ 31,091.05 |
| March 31, 2006 | $ 582,373.00 | $ 31,355.86 |
| June 30, 2006 | $ 583,666.00 | $ 31,451.53 |
| Sept. 30, 2006 | $ 564,788.00 | $ 30,321.12 |
| Dec. 31, 2006 | $ 603,391.00 | $ 32,314.65 |
| March 31, 2007 | $ 488,141.00 | $ 25,924.30 |
| June 30, 2007 | $ 508,246.00 | $ 27,175.50 |
| Sept. 30, 2007 | $ 511,750.00 | $ 27,350.31 |
| Dec. 31, 2007 | $ 403,534.00 | $ 21,349.61 |

| March 31, 2008 | $ | 601,286.00 | $ | 32,218.17 |
|---|---|---|---|---|
| June 30, 2008 | $ | 688,651.00 | $ | 37,095.65 |
| Sept. 30, 2008 | $ | 741,742.00 | $ | 39,966.23 |
| Dec. 31, 2008 | $ | 672,654.00 | $ | 36,334.51 |
| March 31, 2009 | $ | 414,571.00 | $ | 22,114.95 |
| June 30, 2009 | $ | 678,929.00 | $ | 36,708.82 |

27.    A delegate of the Secretary of the Treasury of the United States of America has given notice of the assessments to and made a demand for payment of the assessments described in paragraph twenty-six, upon Executive Jet Management, Inc.

28.    Executive Jet Management, Inc., has failed, neglected, or refused to pay its federal tax liabilities for the assessments described in paragraph twenty-six, above, in full and, after the application of all abatements, payments and credits, it remains indebted to the United States of America for unpaid federal excise taxes and assessed penalties in the amount of $10,004,400.08, plus interest or other accruals that may have accrued after the dates of assessments, or may continue to accrue as provided by law.

WHEREFORE, the United States demands:

1)    the entry of judgment in its favor with respect to the allegations contained in Plaintiffs' complaint;

2)    the entry of judgment against NetJets Large Aircraft, Inc., in the amount of $1,192,027.44, plus interest or other accruals that may have accrued after the dates of assessments described in paragraph five of the counterclaims, or may continue to accrue as provided by law;

3)     the entry of judgment against NetJets International, Inc., in the amount of

$52,963,609.46, plus interest or other accruals that may have accrued after the

dates of assessments described in paragraph twelve of the counterclaims, or may

continue to accrue as provided by law;

4)     the entry of judgment against NetJets Aviation, Inc., in the amount of

$302,111,572.76, plus interest or other accruals that may have accrued after the

dates of assessments described in paragraph nineteen of the counterclaims, or may

continue to accrue as provided by law;

5)     the entry of judgment against Executive Jet Management, Inc., in the amount of

$10,004,400.08, plus interest or other accruals that may have accrued after the

dates of assessments described in paragraph twenty-six of the counterclaims, or

may continue to accrue as provided by law; and

6)     judgment providing such other relief the court determines is just and proper.

JURY DEMAND

The United States demands that all triable issues of fact be tried to a jury.

Respectfully submitted,

JOHN A. DICICCO
Principal Deputy
Assistant Attorney General, Tax Division


/s/ Thomas P. Cole
THOMAS P. COLE
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-9611
Thomas.P.Cole@usdoj.gov

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing **UNITED STATES' AMENDED ANSWER, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** has been made by filing it with the Court via the electronic case filing system, which will send to all attorneys who have appeared in this action electronically an e-mail containing a link to the item, this 8th day of March, 2012. There are no parties who need to be served by manual means.

/s/ Thomas P. Cole
THOMAS P. COLE
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-9611
Thomas.P.Cole@usdoj.gov