UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NETJETS LARGE AIRCRAFT, INC.,** et al.<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>　　　　　Defendant. | CASE NO. 2:11-cv-1023<br><br>JUDGE SARGUS<br><br>MAGISTRATE JUDGE KEMP |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

**I.　Defendant Ignored Its Discovery Obligations**

Defendant contends that, as between Plaintiffs and Defendant, "it has been [Defendant] that has come closer to making timely production of materials." [Mem. in Opp. at pg. 10] Defendant touts the fact that it "produced a disk containing over 10,000 images," and accuses Plaintiffs of delaying their production while they insisted on entry of a protective order. [Id.] Defendant, however, is only telling half-truths.

First, with respect to Defendant's production of "over 10,000 images," Defendant neglects to mention that the large majority of those images are documents that *Plaintiffs produced to Defendant* during the IRS administrative proceedings that preceded the filing of this action, while the remainder are administrative form documents from those proceedings that contain nothing material or important.  While those documents may be significant in number, they are *not* the critical documents that Plaintiffs requested from Defendant more than seven

months ago. The documents Defendant has produced to date are nothing more than window dressing; an attempt by Defendant to create the appearance of a substantial document production.

With respect to the key documents requested by Plaintiffs, Defendant has either failed to produce them, despite repeated promises it would do so, or has refused to produce them based on unsupported claims of lack of relevance. As early as October 2013, Defendant indicated that it would be producing a supplemental disk containing additional documents. Defendant made this same representation again in December 2013, and a third time in January 2014. In fact, Defendant represented on Friday, January 10, 2014 that the supplemental disk would be produced the following Friday. Yet, as of the date of this reply memorandum, Defendant still has not made its supplemental production of the documents Plaintiffs are seeking, and it now claims it is just finishing its review of the documents.

Given these circumstances, Defendant has no basis attempting to claim that it has been the more diligent party in discovery. To the contrary, Defendant has largely ignored its discovery obligations.

It is equally disingenuous for Defendant to contend that Plaintiffs caused discovery delays because of its insistence on a protective order. Plaintiffs actually provided Defendant with a proposed protective order a month *before* the date when Plaintiffs were scheduled to respond to Defendant's discovery requests. Plaintiffs did this in an effort to have a protective order agreed to and entered by the time their documents were due to be produced. Defendant, however, completely ignored Plaintiffs' request for a protective order for three months, until November 19, 2013, and did not make a serious effort at finalizing a protective order until late December of last year. Defendant then allowed the issue to languish into mid-January because

of a holiday break and a subsequent delay of more than a week in responding to changes to the proposed protective order that had been proposed by Plaintiffs.[1]

Defendant contends "[i]t took four months of wrangling with Plaintiffs' attorneys before the parties agreed upon the terms of an agreed protective order," but in reality, the overwhelming majority of that period was attributable to Defendant's complete lack of attention to the issue. Once Defendant actually started paying attention to Plaintiffs' request for a protective order, the parties were able to finalize an order in a matter of two to three weeks. Thus, had Defendant simply responded to Plaintiffs' request for a protective order back in August 2013, the order could have been finalized and Defendant could have received Plaintiffs' document production by late September or early October 2013. In view of these facts, Defendant has no basis trying to blame Plaintiffs for the delays associated with finalization of a protective order. Those delays rest squarely at Defendant's feet.

## II. Defendant Has Mischaracterized Plaintiffs' Fractional Aircraft Management Program

Defendant makes a number of misstatements regarding Plaintiffs' business in an effort to portray it as a form of commercial air charter business that is subject to the excise tax in 26 U.S.C. § 4261. For example, Defendant contends that aircraft owners who participate in Plaintiffs' fractional management program assign their ownership interests back to Plaintiffs after they purchase them. [Mem. in Opp. pg. 2] Defendant also contends that Plaintiffs "maintain a fleet of planes that are used to provide on-demand transportation …." [Id.] Defendant's characterizations of Plaintiffs' business are patently inaccurate.

Given that the parties are currently before the Court on a discovery motion, Defendant had no reason to even address issues relating to Plaintiffs' business. But because Defendant did

---

[1] The details regarding Defendant's delays in finalizing a protective order are addressed in Plaintiffs' memorandum in opposition to Defendant's motion for an enlargement of the discovery cutoff. [Doc. 54]

so, and did so inaccurately, Plaintiffs are obligated to address Defendant's misstatements in order to correct the record.  As explained briefly below, Plaintiffs' aircraft management programs are private aviation, not commercial aviation, and thus the payments Plaintiffs receive from aircraft owners for their management services are not subject to the excise tax set forth in 26 U.S.C. § 4261.

Section 4261 applies only to commercial air transportation; it does not apply to private, also known as general, aviation.  Private aviation is subject to a separate excise tax on fuel.  The legislative history of section 4261 makes this clear:

> PASSENGER AND FREIGHT TICKET TAXES
>
> The Ways and Means Committee's action, insofar as *commercial carriers* are concerned, obtains most of the additional tax revenue from passenger … taxes by increasing the present 5-percent passenger ticket tax to 8 percent and by imposing a new $3 'head' tax on passenger tickets for international flights ….
>
> FUEL TAXES
>
> While the bulk of the user revenues from *commercial carriers* are to be derived from taxes on passengers and freight, most of the *user revenues from general aviation* (i.e., noncommercial aviation, or any use of an aircraft other than in a business of 'transporting persons or property for compensation or hire by air') *will be obtained from taxes on fuel used* in aviation ….
>
> [H.R. Rep. 91-601, 1970 U.S.C.C.A.N. 3047, 3084 (emphasis added)]

Contrary to Defendant's suggestion, the aircraft owners who engage Plaintiffs to manage their aircraft do not assign their ownership interests to Plaintiffs.  Rather, the aircraft owners remain the *bona fide* owners of their aircraft at all times while participating in Plaintiffs' fractional management program.  In addition, Plaintiffs' fractional management program is not a commercial charter operation.  Plaintiffs do not sell charter flights to the general public; rather,

4

they provide aircraft management services to aircraft owners, *i.e.*, they assist the owners in maintaining and operating their aircraft for their own private use.

The Federal Aviation Administration ("FAA"), the agency to which Congress has granted statutory oversight and control of aviation, has expressly determined that fractional aircraft programs such as those operated by Plaintiffs are private aviation, and are *not* charter operations. That is why, in 2003, the FAA promulgated Federal Aviation Regulations ("FARs") explicitly treating fractional aircraft programs as private aviation. The preamble to the 2003 FARs could not be clearer on this issue:

> [F]ractional owners flying aboard fractionally-owned aircraft contractually acknowledge substantial control over and bear substantial responsibility for the airworthiness and operation of their aircraft. Like whole aircraft owners, fractional owners can initiate, conduct, redirect and terminate a flight.… Additionally, … both fractional owners and whole aircraft owners have other shared characteristics that relate at least in part to safety: (1) They conduct research so that they can be assured that they will select the right aircraft and realize an adequate return from their capital investment; (2) they possess an interest in an aircraft acquired through a significant capital investment; (3) they purchase aviation expertise for the purpose of managing, maintaining or otherwise aiding the operation of the aircraft they operate under part 91, including the option to select flight crews; and (4) they bear the risk of loss or damage to the aircraft and the risk of diminution of value of the aircraft. *On-demand charter passengers, on the other hand, do not assume any of these risks and responsibilities nor do they have any significant financial investment in the chartered aircraft. . . .*
>
> *[F]ractional owners flying aboard fractionally-owned and operated aircraft share more of their regulatory characteristics with the owners of non-commercially operated aircraft than with passengers using on-demand operators*….
>
> [Preamble to FARs, 66 Fed. Reg. 37520, 37522 (2001)]

There is no need to waste the Court's time addressing these matters further in the context of a discovery motion. At this point, it is enough to say that Defendant has mischaracterized

5

Plaintiffs' business, and that, when the time comes to address the merits of the case, Plaintiffs will demonstrate that the aircraft owners who use Plaintiffs' aircraft management services are engaged in private aviation that is not subject to the excise tax set forth in section 4261 of the Internal Revenue Code.

**III.　Contrary To Defendant's Suggestion, Plaintiffs Are Not Contending That Their Business Has Changed Since The *Executive Jet* Decision; Rather, They Are Contending That The Legal Premise Underlying The *Executive Jet* Decision Has Changed**

Defendant also mischaracterizes Plaintiffs' position with respect to the Federal Circuit decision involving Plaintiffs' predecessor in *Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463 (Fed. Cir. 1997) (hereinafter "*Executive Jet*").  According to Defendant, Plaintiffs are contending that their business has sufficiently changed since the 1990s such that the *Executive Jet* decision no longer applies.  Here again, Defendant has made inaccurate statements regarding an issue it had no business even raising in response to a discovery motion.  Plaintiffs therefore must correct the record on this issue as well.

Contrary to Defendant's suggestion, Plaintiffs' argument regarding the inapplicability of the *Executive Jet* decision is not focused on changes in Plaintiffs' business; rather, Plaintiffs are contending that the FARs promulgated by the FAA in 2003 completely eviscerated the legal premises underlying the *Executive Jet* decision, and thus the decision is no longer good law.

Fractional aircraft owners pay three different fees to Plaintiffs in exchange for Plaintiffs' aircraft management services: an occupied hourly fee, a monthly management fee, and a fuel variable surcharge.  In *Executive Jet*, the court ruled that the occupied hourly fee – and only the occupied hourly fee – that fractional aircraft owners paid to Executive Jet Aviation was a payment for taxable transportation subject to the ticket tax in section 4261.  The court's decision in *Executive Jet* was based on its conclusion that fractional ownership was not a *bona fide* form

6

of aircraft ownership. *Id*. at 1469. Looking to what it thought was the "substance rather than the form," the court held that Executive Jet Aviation's business was essentially commercial charter transportation, not management of privately owned aircraft. *Id.*

*Executive Jet* was decided at a time when the fractional ownership industry was fledgling and little understood. But since then the FAA has adopted regulations having the force of law that explicitly reject the fundamental premises upon which *Executive Jet* was decided. As noted above, the FAA promulgated a comprehensive set of FARs in 2003 that explicitly regulate the fractional ownership industry. *See* 14 C.F.R. §§ 91.1001-91.1443. The FARs define fractional ownership in a way that ensures that fractional ownership arrangements are extended only to *bona fide* owners of aircraft, and that commercial charter services will not qualify. *See* Preamble to FARs, 66 Fed. Reg. 37520, 37525 (2001). In addition, the FARs impose requirements on fractional management programs that ensure that the fractional owners who participate in those programs engage only in private aviation. As such, the FARs explicitly recognize Plaintiffs fractional programs as the *bona fide* provision of management services to private aircraft owners, not the provision of commercial transportation.

These FARs – and Plaintiffs' qualification thereunder – eviscerate the fundamental underpinning of the *Executive Jet* decision. While the court in *Executive Jet* based its decision on its conclusion that fractional ownership was not *bona fide* and therefore that Executive Jet provided nothing more than charter services, the 2003 FARs hold directly to the contrary; they expressly recognize fractional ownership as a *bona fide* form of private aircraft ownership that is fundamentally different than charter service. Indeed, the FARs establish that the management services provided by Plaintiffs do not constitute *transportation*, as required to fall within the scope of section 4261; rather, Plaintiffs are, as a matter of federal law, "*fractional ownership*

7

*program managers*" who provide "*administrative and aviation support services*." 14 C.F.R. §§ 91.1001(b)(8)-(9) (emphasis added).  As such, the FAA's adoption of the 2003 FARs means that *Executive Jet* is no longer good law.

IV. **The Documents Requested By Plaintiffs Are Relevant To The Theories They Have Asserted In Support Of Their Refund Claims**

Defendant asserts several arguments challenging the relevance of the document requests at issue.  As explained below, all of Defendant's arguments are unavailing.  The document requests at issue seek information that is relevant to at least three of the four theories Plaintiffs have asserted in support of their refund claims in this case, and thus the information is clearly discoverable under Fed. R. Civ. P. 26(b).

A. **Plaintiffs Have Asserted Four Theories In Support Of Their Refund Claims**

Before addressing the specifics of Defendant's arguments regarding the relevance of the requested documents, it is first important to provide a brief description of the four theories Plaintiffs have asserted in support of their refund claims in this case.  Those theories are as follows:

(1) Plaintiffs do not provide "taxable transportation" under 26 U.S.C. § 4261, and thus the payments Plaintiffs receive from aircraft owners are not subject to the section 4261 excise tax.

(2) The IRS failed to provide clear guidance to Plaintiffs that they were required to collect and remit the section 4261 excise tax on the monthly management and fuel variable surcharge fees they received from aircraft owners.

(3) The IRS violated its duty to treat similar taxpayers in a consistent manner because it has assessed the section 4261 excise tax against certain of the fees that Plaintiffs charge

8

fractional aircraft owners while not assessing the tax against those same fees with respect to certain of Plaintiffs' competitors.

(4) The IRS is legally bound by a Technical Advice Memorandum ("TAM") it issued to Plaintiffs' predecessor, Executive Jet Aviation, in 1992, which provides that *only* the occupied hourly fees paid by fractional aircraft owners, and not monthly management or fuel variable surcharge fees, constitute payments for "taxable transportation" under 26 U.S.C. § 4261.  Under applicable Treasury regulations, as well as the IRS's own internal guidelines, the IRS is bound by the 1992 TAM until such time as the IRS issues Plaintiffs another TAM modifying or replacing the one from 1992.  The IRS has never issued such a subsequent TAM, and thus its assessment of the section 4261 tax against Plaintiffs' monthly management and fuel variable surcharge fees, in violation of Treasury regulations and IRS guidelines, was unlawful.

> B. **Defendant's Argument That Plaintiffs' Document Requests Are Irrelevant Because This Is A "De Novo" Proceeding Relates Only To The First Of Plaintiffs' Four Theories; The Requested Documents Are Still Relevant To Plaintiffs' Other Theories**

Defendant argues that Plaintiffs' requests for IRS emails, memoranda and other internal documents are irrelevant, and thus not discoverable, because this refund action is a "de novo proceeding," meaning that the Court will decide for itself whether Plaintiffs provide "taxable transportation" within the meaning of section 4261 of the Internal Revenue Code without any deference to or consideration of the IRS's reasoning on the issue.  Defendant's argument fails, however, because the "de novo" review would apply to only the first of Plaintiffs' theories – that Plaintiffs do not provide "taxable transportation" under section 4261 of the Internal Revenue Code – and has no applicability to Plaintiffs' other three theories.  Thus, as explained below, documents reflecting the IRS's internal discussions and deliberations regarding the scope and

applicability of the section 4261 tax are still relevant to Plaintiffs' second, third, and fourth theories notwithstanding the *de novo* standard cited by Defendant.

> C. **The Requested Documents Are Relevant To Plaintiffs' Second Theory – That The IRS Failed To Meet Its Duty To Provide Clear Guidance Regarding The Application Of The Section 4261 Tax**

Plaintiffs assert in their second theory that the IRS's tax assessments against Plaintiffs' monthly management and fuel variable surcharge fees are unlawful because the IRS failed to meet its duty to provide Plaintiffs with clear guidance of their obligation to collect the tax on those fees. In support of this theory, Plaintiffs rely on *Central Illinois Public Service Co. v. United States*, 435 U.S. 21, 31 (1978), and its progeny, including *General Elevator Corporation v. United States*, 20 Cl. Ct. 345 (1990). In *Central Illinois*, the Supreme Court held that the IRS cannot impose secondary liability against a person for failure to collect taxes unless the IRS has provided "precise and not speculative" guidance to that person of its obligation to collect the tax. The United States Claims Court reached a similar decision in *General Elevator*, where the court held that the IRS's published guidance did not provide adequate notice to the defendant-employer that it had an obligation to withhold social security taxes on per diem travel payments it made to its employees.

In this case, the IRS's emails and other internal documents will support Plaintiffs' theory that the IRS did not meet its duty of clarity, because those documents will show that there was confusion and disagreement within the IRS as to the scope and application of the section 4261 tax to fees charged by fractional aircraft management companies. Indeed, Plaintiffs know for a fact that the IRS, during an administrative appeal involving one of Plaintiffs' competitors, Bombardier, actually determined that the section 4261 tax did not apply to the monthly management fees charged by Bombardier. Defendant cannot credibly argue that the IRS

10

provided clear guidance regarding application of the section 4261 tax to fractional aircraft management programs when the IRS itself had not even developed a clear and settled position on the matter.

Defendant argues that the test under *Central Illinois* focuses only on whether the IRS's *published guidance* provided sufficient notice, and thus the IRS's internal documents and discussions would not be relevant to Plaintiffs' theory.  In making this argument, Defendant relies on the relevance standard set forth in Fed. R. Evid. 401, but that is not the applicable relevance standard for discovery purposes.  Under Fed. R. Civ. P. 26(b)(1), information is relevant and discoverable as long as it "appears reasonably calculated to lead to the discovery of admissible evidence."  This is true even if the information itself would not be admissible at trial.  *See, e.g.*, *Harding v. Transforce, Inc.*, 2013 WL 1828976, at *3 (S.D. Ohio) ("Discovery, however, is not limited to information likely to lead to the discovery of only evidence admissible at trial."); Jewish *War Veterans of the U.S. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007) ("[t]he term 'relevant' has a different meaning – and a broader scope – under Fed.R.Civ.P. 26(b) than it does under Rule 401 of the Federal Rules of Evidence"); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973) ("Ultimate admissibility is simply not the test for relevancy of material to be discovered."); *Quaker Chair Corp. v. Litton Business Systems, Inc.*, 71 F.R.D. 527, 530-31 (S.D.N.Y. 1976) ("It is clear, both from the language of the Rule itself, and also from the construction placed upon it by the courts, that the concept of relevance for discovery purposes is not limited by considerations of evidentiary admissibility at trial, but is interpreted broadly to afford the parties liberal access to evidence in advance of trial.").

In this case, it is likely that documents containing the IRS's discussions and deliberations regarding the scope and application of the section 4261 tax to whole and fractional aircraft

management companies will lead to the discovery of admissible evidence to support Plaintiffs' duty-of-clarity theory. As such, Defendant should be ordered to immediately produce the documents that are responsive to Request Nos. 3, 7, 8, 11, 12, 13, 16 and 17.[2]

### D. The Requested Documents Also Are Relevant To Plaintiffs' Third Theory – That The IRS Has Failed To Satisfy Its Duty To Apply The Section 4261 Tax In A Consistent Manner

It is well settled that the IRS has a duty to treat similarly-situated taxpayers in a consistent manner. *See, e.g.*, *Sherwin-Williams Co. v. United States*, 403 F.3d 793, 797 (6th Cir. 2005); *Sirbo Holdings, Inc. v. C.I.R.*, 476 F.2d 981, 987 (2d Cir. 1973); *IBM Corp. v. United States*, 343 F.2d 914, 923 (Cl. Ct. 1965); *Gateway Equip. Corp. v. United States*, 247 F. Supp. 2d 299, 317-21 (W.D.N.Y. 2003).

It is Plaintiffs' position in this case that the IRS violated their duty of consistency by assessing the section 4261 tax against Plaintiffs' monthly management and fuel variable surcharge fees while deciding to rescind assessments of the same tax against the monthly management and/or fuel variable surcharge fees charged by two of Plaintiffs' competitors, Bombardier and PlaneSense (formerly, Alpha Flying).

Defendant acknowledges that the law imposes a duty of consistency on the IRS. In fact, Defendant admitted the duty in its amended answer. [See Amended Answer and Counterclaim, Doc. 24 ("The United States admits that the IRS has a duty to treat similarly-situated taxpayers in a consistent manner.")] Defendant argues, however, that the IRS's inconsistent treatment of Plaintiffs in comparison to its competitors was "isolated" and "erroneous," and thus the IRS's

---

[2] Defendant suggests that a Technical Advice Memorandum it issued in 2004 – TAM 200425048 – provided adequate guidance of the IRS's intent to apply the section 4261 tax to monthly management and fuel variable surcharge fees. Defendant neglects to mention, however, that the 2004 TAM was issued as part of the IRS's examination of Bombardier, and that, as described above, the IRS's *appeals division* actually reversed the position set forth in the TAM and held that monthly management fees are *not* subject to the section 4261 tax. Given these facts, Defendant cannot point to the 2004 TAM as evidence of IRS guidance. Indeed, this is a perfect example of one reason why Plaintiffs need discovery of the IRS's internal records – to preclude Defendant from falsely relying on the 2004 TAM.

actions did not violate the duty of consistency. [Mem. in Opp. at pg. 9]  Based on this argument, Defendant contends that "material related to how other taxpayers have been treated with respect to the issues involved in this case are not relevant." [Id.]  Defendant's argument fails for two reasons.

First, Defendant's argument that the requested documents are not relevant depends on the Court accepting Defendant's position that there is an "isolated" and "erroneous" exception to the duty of consistency, and that the IRS's actions with respect to Plaintiffs and its competitors meet this alleged exception.  A discovery motion is not the time or place to make this type of merits determination.  Defendant acknowledges a duty of consistency exists, and that is sufficient to entitle Plaintiffs' to the discovery they seek.  Questions regarding the scope and application of that duty will be determined later.

Second, even if the Court were to accept Defendant's argument that an "isolated" and "erroneous" exception exists, the facts show that the IRS's decisions to rescind the assessments of the section 4261 tax it had made against monthly management and/or fuel variable surcharge fees of Plaintiffs' competitors *were not isolated or erroneous*.  As noted above, the IRS has rescinded assessments of the section 4261 tax against the monthly management and/or fuel variable surcharge fees of at least two of Plaintiffs' competitors.  The first instance occurred in 2006, when the IRS's appeals division decided that the section 4261 tax did not apply to the monthly management fees charged by Bombardier and thus rescinded the assessments the IRS had issued against those fees.  The second instance occurred just last year, when the IRS, after litigation had ensued, decided to rescind its assessments of the section 4261 tax with respect to both the monthly management and fuel variable surcharge fees of PlaneSense.  The fact that the

13

IRS has acted in this fashion at least twice clearly demonstrates the IRS's actions were not isolated nor were they the result of mere error. To the contrary, the IRS acted deliberately.

Given these circumstances, Plaintiffs are entitled to discovery of IRS materials showing their inconsistent treatment of fractional management companies with respect to its application of the section 4261 tax. Defendant should be ordered to immediately produce the documents that are responsive to Request Nos. 3, 7, 8, 11, 12, 13, 16 and 17.

> **E.** **The Requested Documents Are Relevant To Plaintiffs' Fourth Theory – That The IRS's Assessments Against Plaintiffs' Monthly Management And Fuel Variable Surcharge Fees Are Unlawful Because They Are Contrary To The IRS's December 22, 1992 TAM**

In Request No. 1, Plaintiffs seek documents relating to the IRS's December 22, 1992 TAM, which the IRS issued as part of an excise tax examination of Plaintiffs' predecessor, Executive Jet Aviation. That TAM, as interpreted and applied by the IRS, provides that only the occupied hourly fees (and *not* the monthly management or fuel variable surcharge fees) that aircraft owners pay to Executive Jet Aviation and its successors are payments for taxable transportation under 26 U.S.C. § 4261. Under applicable Treasury regulations, as well as the IRS's own internal guidelines, the IRS is bound by its 1992 TAM and thus could not retroactively assess the section 4261 tax against any fees other than Plaintiffs' occupied hourly fees. As such, IRS documents relating to the 1992 TAM clearly are relevant to Plaintiffs' fourth theory.

Defendant finally has agreed that it will search for and produce these documents, but it claims it still needs to understand the nature of the successor relationship between Executive Jet Aviation and Plaintiffs to make sure there are no confidentiality concerns in providing the documents to Plaintiffs. Defendant, however, concedes in its memorandum in opposition that at least one of the Plaintiffs, NetJets Aviation, is a successor to Executive Jet Aviation, and thus the

14

requested information can be produced at least to NetJets Aviation without the need to waste time and money addressing the successor status of the other Plaintiffs at this stage of the litigation. Defendant therefore should be ordered to produce immediately all documents relating to the December 22, 1992 TAM and the corresponding IRS examination of Executive Jet Aviation.

In addition, the documents Plaintiffs have requested relating to the *Executive Jet* litigation from the 1990s – Request Nos. 10 and 22 – are also relevant to Plaintiffs' fourth theory because, during that litigation, the IRS confirmed the position set forth in its 1992 TAM that only the occupied hourly fee is subject to the section 4261 tax. Defendant has agreed to produce the requested documents relating to the *Executive Jet* litigation, although it claims that one of the boxes containing responsive documents cannot be found. Defendant should be ordered to produce immediately all documents relating to the *Executive Jet* litigation, including the missing box. If Defendant is unable to locate and produce the missing box of documents, the parties will then need to address the question of spoliation.

V.  **Defendant Should Be Ordered To Produce Emails From All Custodians Involved In The IRS's Discussions And Deliberations Regarding The Scope And Application Of The Section 4261 Tax To Fractional Management Companies**

In Request No. 16, Plaintiffs asked Defendant to "produce all emails and other communications regarding the Section 4261 Tax and its application to fractional aircraft management companies, including without limitation NetJets." In response, Defendant stated that it would limit its production to the emails of just three IRS employees: Annette Schirtzinger, Lori Leonard, and Jody Angelo.

Plaintiffs pointed out in their motion to compel that there are at least eight other current or former IRS employees who have been involved in the IRS's application of the section 4261

15

tax to fractional management companies, and that the IRS therefore should be ordered to produce the emails of those eight individuals as well as any other IRS employees involved those matters. Defendant, however, continues to refuse to produce emails from any employees other than the three individuals identified above.

In support of its position, Defendant again asserts its "*de novo* proceedings" argument, claiming that the IRS's internal discussions and deliberations "are not relevant to the issue of whether the § 4261 tax is owed." In addition, Defendant claims it should not be required to produce emails of former employees. Neither of these arguments has any merit.

First, as set forth above, irrespective of whether this Court conducts a *de novo* review of the applicability of the section 4261 tax, IRS emails reflecting discussions and analysis regarding the IRS's application of that tax remain relevant to Plaintiffs' second, third, and fourth theories. Second, the fact that some of the individuals who sent or received responsive emails are no longer employed by the IRS does not mean the IRS can withhold those emails. There is no such thing as a "former employee" exception under the federal discovery rules. Defendant should be ordered to search for and produce responsive emails of all current and former employees who have been involved in matters relating to the IRS's application of the section 4261 tax to fractional management programs.

### VI. Defendant Should Be Ordered To Produce A Privilege Log Of All Documents It Is Withholding On Grounds Of Taxpayer Confidentiality Under 26 U.S.C. § 6103

Defendant makes numerous references to the taxpayer confidentiality provisions of 26 U.S.C. § 6103 and the alleged restraints those provisions place on Defendant's production of documents in this case. It is impossible for Plaintiffs to address this issue, however, without knowing the nature of the documents to which Defendant is asserting section 6103 protection.

Defendant should not be permitted to assert section 6103 protection over information that is not specific to a particular taxpayer, such as documents containing legal analysis or internal IRS discussions relating to the application of the section 4261 tax to whole or fractional aircraft management programs in general. *See, e.g.*, *First Heights Banks, FSB v. United States*, 46 Fed. Cl. 312 (2000) (holding that section 6103 did not protect "IRS documents that contain generalized legal analysis and policy information relating to the application of particular sections of the tax code to groups of taxpayers"). But Plaintiffs cannot assess the propriety of Defendant's reliance on section 6103 at this point because they do not know the specific documents and information for which Defendant will assert confidentiality under that statute.

For this reason, Plaintiffs respectfully request that the Court require Defendant to produce a privilege log of all documents for which Defendant is asserting section 6103 confidentiality.

## VII. Conclusion

For the reasons set forth herein and in Plaintiffs' motion to compel (Doc. 45), Plaintiffs respectfully request that the Court order Defendant to produce immediately all nonprivileged documents that are responsive to Plaintiffs' Document Request Nos. 1, 3, 7, 8, 10, 11, 12, 13, 16, 17, and 22. In addition, Plaintiffs respectfully request that the Court order Defendant to produce a privilege log of all documents that Defendant is withholding on grounds of confidentiality under 26 U.S.C. § 6103 or any other privilege.

Respectfully submitted,

/s/ Bradley T. Ferrell
John W. Zeiger  (0010707), Trial Attorney
Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street, Suite 3500
Columbus, Ohio 43215
Telephone:  (614) 365-9900
Facsimile:   (614) 365-7600
Email:  zeiger@litohio.com
            ferrell@litohio.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March, 2014, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas P. Cole
Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, DC 20044

Counsel for Defendant

/s/ Bradley T. Ferrell
Bradley T. Ferrell (0070965)

948-001:480810v2