IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NetJets Large Aircraft, Inc.,   :
et al.,
                                :
        Plaintiffs,
                                :
    v.                              Case No. 2:11-cv-1023
                                :
                                    JUDGE EDMUND A. SARGUS, JR.
United States of America,       :   Magistrate Judge Kemp

        Defendant.              :

OPINION AND ORDER

    Plaintiffs, companies that provide aircraft management and
aviation support services to aircraft owners and leaseholders
(with whole and/or fractional interests in the aircrafts), filed
this action against the United States under the Internal Revenue
Code, 26 U.S.C. §4261, for refund and abatement of excise taxes,
interest and penalties.  A number of motions have been filed
involving issues that have arisen during discovery.  Plaintiffs
have moved to compel production of documents (Doc. 45) and to
compel depositions (Doc. 46).  The United States has moved for a
protective order (Doc. 51) and for an enlargement of time to
complete discovery and to file motions for summary judgment
(Docs. 48 & 60).  This Opinion and Order resolves all of those
motions.

I.  Background

    Plaintiffs are companies which provide management services
to people and companies that own or lease either whole aircrafts
or fractional interests in aircrafts.  A fractionally owned
aircraft is one owned by multiple persons, each of whom owns a
specified share of the aircraft.  Plaintiffs state that they
offer services including assistance with filings, aircraft
inspection, maintenance, service, repair, overhaul, and testing.

The owners and fractional owners pay monthly management fees in a fixed amount that does not vary based on the owner's aircraft use and also pay certain variable fees or hourly fees that depend on usage.

The United States imposes a tax on amounts paid for taxable transportation, which Plaintiffs refer to as a ticket tax. 26 U.S.C. §§ 4261(a) & 4262. The person or entity receiving payment for taxable transportation is the one responsible for collecting the tax from the payor. In 1958, the United States issued Revenue Ruling 58-215, which included the following language:

> Where a corporation owns an aircraft an appoints an airline company as its agent to service, maintain, overhaul, and operate such aircraft for the purpose of transporting the corporation's personnel, the airline company is not furnishing transportation service to such corporation within the purview of section 4261 of the Internal Revenue Code of 1954. Therefore, amounts paid for such services are not subject to the tax on transportation of persons.

(Doc. 22 at ¶41 and Answer to ¶41).

At some point, companies such as Executive Jet Aviation, Inc., the predecessor of one or more of the Plaintiffs, began facilitating fractional ownership of aircrafts. In 1992 the IRS issued a Technical Advice Memorandum ("TAM") to Executive Jet Aviation, Inc. as part of an audit. That TAM decided that only the "occupied hourly fee" charged by Executive Jet Aviation was subject to the section 4261 tax. In 1998, the Federal Circuit Court of Appeals considered and decided a case addressing the issue of whether amounts paid by fractional owners to fractional aircraft management companies are subject to the tax imposed by section 4261(a). In Executive Jet Aviation, Inc. v. United States, 125 F.3d 1463 (Fed. Cir. 1998), the court held that the occupied hourly fees that fractional management companies received from fractional owners were subject to the tax imposed

by section 4261(a). Plaintiffs contend that the fundamental premise of the <u>Executive Jet</u> decision was that fractional ownership was not a bona fide economic arrangement.

In 2003, the Federal Aviation Administration promulgated the first regulations that specifically addressed fractional ownership of aircrafts. Plaintiffs contend that "the new [regulations] – which have the effect of law – expressly recognize fractional ownership as a bona fide form of ownership, and also require that fractional owners enter into the very management and dry-lease agreements that fractional owners enter into with the NetJets entities." (Doc. 22 at ¶51).

In 2010, the Examination Division of the IRS proposed assessments, along with penalties and interest on each of the assessments, of the section 4261(a) tax on the monthly management fees and fuel variable surcharges for tax periods spanning four to six years for the various Plaintiffs. (Doc. 22 at ¶57 & Answer to ¶57). The IRS already was of the view that Plaintiffs were obliged to collect and remit taxes imposed by section 4261(a) on the occupied hourly fees. Plaintiffs filed protests with the IRS, which were denied, and refund claims with the IRS, which were also denied. Plaintiffs then brought this action seeking a refund and abatement of all section 4261(a) taxes paid on occupied hourly fees, monthly management fees, fuel variable surcharges, and pass through costs.

## II.  <u>Analysis</u>

### A.  <u>Scope of Discovery</u>

With the exception of the motions for enlargement of time, all of the motions at issue address the proper scope of discovery. The general principles involving the proper scope of discovery are well known. The Federal Rules of Civil Procedure provide that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26. Furthermore, upon a showing of good cause, the Court may permit broader discovery of matters "relevant to the subject matter involved in the action." Id.

On the other hand, courts have discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery in resolving the issues, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources. See Fed. R. Civ. P. 26(b)(2).

As is more fully explained below, Plaintiffs have sought to discover a fair amount of information about how the IRS has interpreted and applied the section of the Internal Revenue Code at issue in this case. The United States argues that almost all of this discovery falls outside the proper scope of discovery described in Rule 26. According to the United States, the question of whether the IRS properly levied taxes against Plaintiffs under 26 U.S.C. §4261 will be decided by the Court de novo and any discovery into IRS deliberations about how that section is or should be applied are simply irrelevant. Plaintiffs counter that the United States' argument addresses

4

only the first of Plaintiffs' four theories for recovery – that
§4261 does not, as a matter of law, apply to the fees which the
IRS has attempted to tax – and that the information they seek is
relevant to the other three theories they advance.

Plaintiffs have sought relief in this case on four grounds –
that:

> (1) Plaintiffs do not provide "taxable transportation"
> under 26 U.S.C. §4261, and thus the payments Plaintiffs
> receive from aircraft owners are not subject to the
> section 4261 excise tax;

> (2) The IRS failed to provide clear guidance to
> Plaintiffs that they were required to collect and remit
> the section 4261 excise tax on the monthly management
> and fuel variable surcharge fees they received from
> aircraft owners;

> (3) The IRS violated its duty to treat similar
> taxpayers in a consistent manner because it has
> assessed the section 4261 excise tax against certain of
> the fees that Plaintiffs charge fractional aircraft
> owners while not assessing the tax against those same
> fees with respect to certain of Plaintiffs'
> competitors; and

> (4) The IRS is legally bound by a Technical Advice
> Memorandum ("TAM") it issued to Plaintiffs'
> predecessor, Executive Jet Aviation, in 1992, which
> provides that *only* the occupied hourly fees paid by
> fractional aircraft owners, and not monthly management
> or fuel variable surcharge fees, constitute payments
> for "taxable transportation" under 26 U.S.C. §4261.
> Under applicable Treasury regulations, as well as the
> IRS's own internal guidelines, the IRS is bound by the
> 1992 TAM until such time as the IRS issues Plaintiffs
> another TAM modifying or replacing the one from 1992.
> The IRS has never issued such a subsequent TAM, and
> thus its assessment of the section 4261 tax against
> Plaintiffs' monthly management and fuel variable
> surcharge fees, in violation of Treasury regulations
> and IRS guidelines, was unlawful.

(Doc. 55 at 8-9; see also Doc. 45 at 2 (listing same factors in a
different order)).  Because the discovery motions turn, in large

5

part, on the parties' arguments regarding these four theories, the Court will discuss each theory in turn.

It seems clear that if Plaintiffs were only proceeding under their first theory, they would not need most of the discovery being sought in the motions to compel. However, Plaintiffs argue that even if the Court determines that Plaintiffs are subject to the section 4261 excise tax as a matter of law, they still would be entitled to a refund and other damages because the IRS could not properly enforce the tax against Plaintiffs if any of the remaining three theories have merit.

Plaintiffs' second theory – that the IRS could not apply a tax to a collector such as Plaintiffs unless it provided clear guidance to the Plaintiffs that they were required to collect the tax – raises the question of whether Plaintiffs had sufficient notice of a duty to collect. Plaintiffs' notice theory is based primarily upon the Supreme Court's decision in Central Illinois Public Service Co. v. United States, 435 U.S. 21 (1978). In that case, the question was whether lunch reimbursements of employees by the employer constituted "wages" within the withholding provisions of the statutes; if so, the employer was required to withhold federal income tax on those reimbursements. The Court held that "[b]ecause the employer is in a secondary position as to liability for any tax of the employee, it is a matter of obvious concern that, absent further specific congressional action, the employer's obligation to withhold be precise and not speculative." Central Illinois Public Serv. Co., 435 U.S. at 31-32 (citations omitted). The Court further noted that Congress could certainly expand the definition of wages for withholding, but "[i]t has not done so as yet. And we cannot justify the Government's attempt to do so by judicial determination." Id. at 33.

Plaintiffs also point to a more recent United States Claims

6

Court case, <u>General Elevator Corp. v. United States</u>, 20 Cl. Ct. 345 (1990). That case considered a different question about the definition of "wages" subject to withholding and concluded, based on <u>Central Illinois</u>, that the employer must have "adequate notice" and did not in that case:

> The "deputy tax collector," the employer, must have adequate notice so that it will "know what the IRS thinks the law is and therefore what actions they have to take." <u>Central Illinois Public Service Co. v. United States</u>, 435 U.S. 21, 31-32, 98 S.Ct. 917, 922-23, 55 L.Ed.2d 82 (1978); <u>McGraw Hill, Inc. v. United States</u>, 623 F.2d 700, 224 Ct.Cl. 354, 364 (1980). The facts in this case do not establish a precise and clear duty to withhold. A careful review of all of the revenue rulings which defendant cites as having provided adequate notice to plaintiff of its obligation to withhold from per diem payments clearly shows that none specifically apply to the circumstances respecting plaintiff's per diem arrangement.

<u>Gen. Elevator Corp. v. United States</u>, 20 Cl. Ct. 345, 353 (1990).

While the parties may dispute exactly what amount of notice the IRS must provide to employers with secondary liability for collecting taxes, since notice is an issue in this case, Plaintiffs are entitled to discovery about it. The United States seeks to limit discovery on this issue to "1) what the IRS has said publicly on the matter; and 2) what the Plaintiff knew or should have known with respect to what the IRS has said publicly on the matter." (Doc. 49 at 7). However, even the United States' interpretation of <u>Central Illinois</u> goes beyond public statements. The United States argues that the holding of <u>Central Illinois</u> "squarely puts the inquiry as to whether there is an obligation to collect on the reasonableness of the collector's actions." (Doc. 49 at 7). To the extent that the IRS engaged in internal deliberations regarding whether public notice had been given and whether Plaintiffs or other similarly situated companies had sufficient guidance, those deliberations are

7

relevant to whether Plaintiffs were acting reasonably. Accordingly, Plaintiffs are correct that some internal deliberations will be relevant to this theory.

Even if that information is relevant, the United States, citing Flamingo Fishing Corp. v. United States, 31 Fed. Cl. 655, 658 (Fed. Cl. 1994), argues that the opinions and reasoning of government officials are not subject to discovery. The court in that case did make broad pronouncements about the discoverability and relevance of opinions of government officials, but its holding is much narrower. The defendant argued that the opinion of the government officials was irrelevant to "whatever 'notice' the plaintiffs themselves may ... or may not have received," but the plaintiffs themselves did not argue the notice issue, instead asserting "that the questions [posed in discovery] will lead to evidence that the definition of [one term in the Internal Revenue Code] is ambiguous and was applied inconsistently by the agents." Id. Accordingly, the court addressed whether the government official's opinions were relevant to the court's de novo interpretation of the Internal Revenue Code and not whether the government officials could testify to any facts relevant to whether plaintiffs were given adequate notice of taxes they were to collect. Id.

There is limited guidance for the Court as to what discovery is relevant to whether Plaintiffs reasonably should have known what taxes they were to collect. However, because internal IRS deliberations would inform the question of whether Plaintiffs' actions were reasonable in light of the published guidance and absent evidence that permitting such discovery would be unduly duplicative, burdensome, or privileged the Court determines that those deliberations are within the proper scope of discovery.

Plaintiffs' third theory – that the IRS cannot apply this tax to Plaintiffs because it violated its duty to treat similar

8

taxpayers in a consistent manner – is a disparate treatment argument. This theory turns on a duty articulated in, among other cases, Sherwin-Williams Co. v. United States, 403 F.3d 793, 797 (6th Cir. 2005) ("As a general matter, similarly situated taxpayers should not be treated differently"). The United States asserts, without any support, that such a duty does not create in a taxpayer a right to escape its tax liability. The reported and unreported decisions on this issue show significant disagreement about whether the violation of the IRS's duty to treat similar taxpayers in a consistent manner can be an affirmative defense to an otherwise proper tax liability. See e.g., Steve R. Johnson, An IRS Duty of Consistency: The Failure of Common Law Making and A Proposed Legislative Solution, 77 Tenn. L. Rev. 563, 567 (2010) ("Unfortunately, the result of common law making has been doctrinal chaos"). In light of the varied court responses, it makes sense to look to the most recent Court of Appeals decision discussing the issue. The Sherwin-Williams decision, while holding that the disparate treatment argument lacked merit because the plaintiff failed to prove disparate treatment, implied that such an argument could be meritorious with the right evidence. Accordingly, the Court finds that this is the most reliable indicator of the direction this Circuit is heading, and the Court deems discovery as to this theory to be relevant.

The United States also points to Vons Companies, Inc. v. United States, 51 Fed. Cl. 1, 12 (Fed. Cl. 2001) modified, 00-234T, 2001 WL 1555306 (Fed. Cl. Nov. 30, 2001), to support its argument that discovery about disparate treatment is not appropriate here. However, the Vons case was a de novo proceeding, which made internal IRS deliberations irrelevant. Id. at *5-6.

Additionally, the United States argues that there can be no disparate treatment when inconsistent treatment of competitors

9

was isolated and erroneous. Whether the treatment of Plaintiffs'
competitors was isolated and erroneous is a question of fact,
however, and discovery is appropriate on such issues.

Lastly, the United States raises arguments regarding the
protections of 26 U.S.C. §6103(a). However, those do not involve
the relevance of the discovery and are more in line with
questions of privilege. In the context of Plaintiffs' motion to
compel production of documents, Plaintiffs do not contest the
right of the United States to withhold documents that would
violate section 6103(a). In their reply brief, Plaintiffs argue
that they cannot "assess the propriety of Defendant's reliance on
section 6103 at this point because they do not know the specific
documents and information for which Defendant will assert
confidentiality under that statute." (Doc. 55 at 17).
Accordingly, there is no substantive discussion of the limits of
section 6103(a) in the context of Plaintiffs' motion to compel
document requests. In the context of Plaintiffs' motion to
compel depositions and the United States' motion for a protective
order, the United States argues that Plaintiffs intend to seek
certain information from the proposed deponents that is protected
by section 6103(a). Accordingly, the protections of section
6103(a) will be discussed in the context of the motions regarding
the depositions.

As to Plaintiffs' fourth theory – that the IRS is legally
bound by a TAM it issued to Plaintiffs' predecessor – the United
States has raised different questions in each motion, most of
which do not relate to relevance. Accordingly, those questions
are addressed in connection with Plaintiffs' specific written
discovery requests and proposed depositions.

B. Motion to Compel Production of Documents

Plaintiffs' motion to compel seeks two categories of
documents: (1) documents that the United States agreed to produce

10

but failed to produce, and (2) documents that the United States refused to produce in whole or part.

Plaintiffs initially identify the documents that the United States agreed to but failed to produce as documents responsive to Request Numbers 3, 7, and 10. Those requests seek "all IRS files and other documents that relate to the application of the Section 4261 Tax to any fractional aircraft management program . . ."; "all documents containing or relating to IRS analyses, evaluations, assessments, deliberations or determinations regarding the Section 4261 Tax and fractional aircraft management companies"; and "all documents reflecting or relating to analyses, evaluations, discussions or deliberations regarding the decisions of the Court of Federal Claims or the Federal Circuit in Executive Jet Case." (Doc. 45, Exh. 2). The United States does not dispute that it has agreed to produce the non-privileged materials "related to the tax assessments at issue in this case." (Doc. 49 at 11). The United States further acknowledged that it has not produced all such documents and hoped to produce them by the end of February, which has now passed. (Doc. 49 at 11-12). To the extent that the United States has not produced such documents, it will be ordered to do so within 14 days of the date of this Order.

As a result of the briefing of this issue, the parties appear to be in agreement that the United States will produce non-privileged documents responsive to Request Number 1 to the extent that such documents exist. (Doc. 49 at 12; Doc. 55 at 14). To the extent that the United States has not already produced such documents, it will be ordered to do so within 14 days of the date of this Order.

Also as a result of the briefing on this issue, the parties appear to be in substantial agreement as to Request Number 22, which seeks all "pleadings, motions, memoranda, briefs,

deposition transcripts, hearing transcripts, stipulations, briefs and other court-filed documents from the Executive Jet Case." The United States originally agreed to produce any "publicly-filed" materials from the Executive Jet Case that it was able to locate, subject to privilege and the protective order entered in that case. Plaintiffs argued that the production should not be limited to "publicly-filed" materials and that the protective order should not prevent disclosure to Plaintiffs because they are successors of the plaintiff in the Executive Jet Case. In responding to Plaintiffs' motion, the United States agreed that it would produce non-privileged responsive documents, whether publicly filed or not, once it had more specific information about how the Plaintiffs are successors to the entity involved in the Executive Jet Case. It is not this Court's job to spell out for the parties the specific steps needed to resolve any remaining questions about the Plaintiffs' succession from the plaintiff in the Executive Jet Case. However, the Court is confident that the parties can resolve that issue within ample time for the United States to produce non-privileged, responsive documents within 30 days of the date of this Order. The United States represented that it was told that there were two boxes of materials but that it only received one box of materials. To the extent that the United States has not located the second box of materials when it produces documents responsive to this request, it shall provide to Plaintiffs an explanation of the steps it has taken to try to locate that second box of materials.

The parties dispute the relevance of several other requests. First Request Number 8 seeks documents relating to IRS analyses, evaluations, assessments, deliberations, or determinations regarding the Section 4161 tax and whole aircraft management companies. The United States has argued that this request is not relevant. Plaintiffs respond that it is relevant to their second

and third theories.  The Court agrees that this request is relevant to Plaintiffs' second and third theories, and that the United States should produce documents that are responsive to this request to the extent that the information is not protected from disclosure under 26 U.S.C. §6103 or otherwise privileged.

Request Numbers 12 and 13 seek documents relating to the IRS's determination that the section 4261 tax applies to monthly management fees and fuel variable surcharge fees charged by NetJets.  The United States responded that it would produce a subset of responsive documents – specifically the IRS examination files for the time periods and taxpayers involved in this lawsuit.  Plaintiffs ask for all responsive documents and not just the IRS examination files, arguing that the internal IRS documents relating to this request are relevant to Plaintiffs' second and third theories.  Plaintiffs do not specifically argue that either the time period limitation or the limitation to certain taxpayers proposed by the United States are inappropriate.  The Court agrees that documents beyond just the IRS examination files are relevant here.  The United States should produce documents that are responsive to these requests for the time periods and taxpayers involved in this litigation to the extent that the information is not protected from disclosure under 26 U.S.C. §6103 or otherwise privileged.

Request Number 16 seeks communications regarding the section 4261 tax and its application to fractional aircraft management companies.  The United States agreed to produce non-privileged portions of emails generated and saved by three IRS employees. (The United States noted that it used the term privilege to include the protections of 26 U.S.C. §6103).  The United States argued that any other documents were irrelevant and unduly burdensome, although it has provided no evidence or explanation of the burden that searching more broadly would entail.  The

13

Court agrees that documents beyond just the emails "generated and saved" by the three IRS employees the United States suggested are relevant to Plaintiffs' second and third theories.  The United States should search the email accounts of all IRS employees and former employees who were involved in matters relating to the application of the section 4261 tax to fractional aircraft management companies and should produce documents that are responsive to Request Number 16 to the extent that the information is not protected from disclosure under 26 U.S.C. §6103 or otherwise privileged.  The Court sees no reason that the emails would have to be "generated" by the person whose email account is being searched in order to be relevant.

Request Numbers 11 and 17 sought all documents relating to the IRS's decision to apply the section 4261 tax to Executive Jet Management, Inc. and all communications regarding the section 4261 tax and its application to whole aircraft management companies (including Executive Jet Management, Inc.).  As with Request Numbers 12 and 13, the United States responded that it would produce a subset of responsive documents – specifically the IRS examination files for Executive Jet Management, Inc. for the time periods involved in this lawsuit.  Plaintiffs ask for all responsive documents and not just the IRS examination files, arguing that the internal IRS documents relating to this request are relevant to Plaintiffs' second and third theories. Plaintiffs do not specifically argue that either the time period limitation or the limitation to Executive Jet Management, Inc. proposed by the United States are inappropriate.  The Court agrees that documents beyond just the IRS examination files are relevant here.  The United States should produce documents relating to Executive Jet Management, Inc. that are responsive to these requests for the time periods involved in this litigation to the extent that the information is not protected from

14

disclosure under 26 U.S.C. §6103 or otherwise privileged.

Because Plaintiffs did not raise the issue of whether Defendants should be required to provide a privilege log with respect to any documents withheld under 26 U.S.C. §6103 in their motion and only raised it in their reply brief, the United States has not had an opportunity to brief that issue, and that issue is not properly before the Court at this time.

C.  Motion to Compel Depositions and Motion for Protective Order

Plaintiffs noticed the depositions of seven IRS employees or former employees whom the United States refused to make available for deposition.  Plaintiffs moved to compel the depositions, and the United States has opposed the motion to compel depositions and has filed a motion for a protective order to quash the deposition notices of six of the seven IRS current or former employees.

The United States first argued that six of the seven proposed deponents were "not in a position to have knowledge of any facts that would tend to show that any question of fact in issue in this case is more or less probable than it would be without the evidence and they were not in a position to have any evidence that is reasonably calculated to lead to any such facts."  (Doc. 50 at 1-2).  However, that argument was based on the first of Plaintiffs' legal theories.  As discussed above in section A, Plaintiff has four theories, and Plaintiffs are correct that those theories broaden the scope of discovery beyond what would be relevant if this were merely a de novo legal interpretation of the statute.

Plaintiffs' second theory regarding whether they had sufficient notice of the taxes they were to collect makes certain internal communications relevant.  For instance, communications regarding whether public notice was given and whether Plaintiffs or other similarly situated companies had sufficient guidance are

15

relevant for discovery purposes.  To the extent that the proposed deponents can testify to communications regarding the notice that companies like Plaintiffs had regarding the application of the §4261 tax to fractional ownership aircraft programs and whole aircraft management programs and whether any notice or guidance provided to the industry was clear, that testimony is relevant here.  While the United States has asserted that certain deponents would have no discoverable information, it has not provided any evidence to indicate that any of the seven potential deponents would be without any knowledge regarding this topic.

Plaintiffs' third theory regarding disparate treatment makes discovery regarding treatment of similar taxpayers relevant. However, the United States has argued that all questions relating to the treatment of similar taxpayers will be precluded by 26 U.S.C. §6103.  Section 6103(a) provides generally that returns and return information shall be confidential and precludes present and former officers and employees of the United States (as well as others) from disclosing any returns or return information obtained in connection with his or her employment. 26 U.S.C. §6103(a).  Section 6103(b) defines "return information" to include, among other items, a taxpayer's identity, information about his or her income, tax liability, tax payments, etc., and "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense."  26 U.S.C. §6103(b).  Section 6103(c) provides that returns and return information may be disclosed in certain circumstances where the taxpayer has consented in writing to the disclosure.  Plaintiffs argue that it is premature to make any determinations as to the

applicability of section 6103 because those determinations necessarily depend on the nature of the specific questions asked at the depositions, and Plaintiffs also argue that they may obtain section 6103 waivers from other aircraft management companies.

The Court agrees with Plaintiffs that, as a general matter, assertions of privilege are best addressed in connection with specific deposition questions. See, e.g., United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir. 1974) (holding that assertions of privilege must normally be raised "as to each record sought and each question asked so that ... the court can rule with specificity"); Matter of Walsh, 623 F.2d 489, 493 (7th Cir. 1980) (citing Hodgson); E.E.O.C. v. Kaplan Higher Educ. Corp., 1:10 CV 2882, 2011 WL 2115878, *3 (N.D. Ohio May 27, 2011) (holding that it would be premature to rule on assertions of privilege prior to a deposition and citing Hodgson). In light of the reluctance of courts to rule on general assertions of privilege and in light of the absence of evidence regarding the specific knowledge and likely testimony of the potential deponents here, it is premature to rule on the applicability of section 6103 to the proposed deponents as a general matter. In addition, the United States has provided no evidence that the proposed deponents lack knowledge of information relevant to Plaintiffs' third theory.

Plaintiffs' fourth theory – that the IRS is legally bound by a TAM it issued to Plaintiffs' predecessor – overlaps to some degree with Plaintiffs' second theory as far as discovery is concerned. Plaintiffs argue that testimony regarding the 1992 TAM and the subsequent Executive Jet litigation is relevant to this theory, but they do not explain what type of testimony would be relevant. The United States' argument regarding this theory is primarily directed at the content of the TAM and to what

17

extent it is binding – arguing that because the TAM does not have the effect that Plaintiffs argue it does, "there is no testimony that can be offered by IRS employees that would be admissible as relevant or could lead to the discovery of admissible evidence in this case." (Doc. 59 at 13). The Court does not have enough evidence at this time to determine what testimony, if any, would be relevant to this theory.

Plaintiffs' second and third theories involve questions of fact that the potential deponents may be able to answer, and the United States has failed to demonstrate good cause to issue a protective order on the basis that any of the deponents were not in a position to have knowledge of any facts that would tend to show that any question of fact in issue in this case is more or less probable than it would be without the evidence.

The United States next argued that Plaintiffs failed to comply with Department of Treasury regulations that govern the disclosure of official information by IRS employees in light of the Court's ruling in United States ex rel Touhy v. Ragen, 340 U.S. 462, 467-69 (1951). The United States contends that the Department of Treasury regulations, 26 C.F.R. §301.9000-1 through 7, preclude the disclosure of information by a current or former Treasury Department employee without prior approval of the Commissioner of Internal Revenue or the appropriate delegate.

However, Touhy does not apply to litigation in which the United States is a party. See Alexander v. F.B.I., 186 F.R.D. 66, 70 (D.D.C. 1998) (citing State of Louisiana v. Sparks, 978 F.2d 226, 234 (5th Cir. 1992) & Boron Oil Co. v. Downie, 873 F.2d 67 (4th Cir. 1989)). The reasoning for this distinction is articulated by the court in Alexander v. FBI, 186 F.R.D. at 70-71:

> When the United States is a party to litigation, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."

18

United States v. Reynolds, 345 U.S. 1, 9–10, 73 S.Ct. 528, 97 L.Ed. 727 (1953).  This would create a significant separation of powers problem.  See Committee for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 793–94 (D.C. Cir. 1971) ("[N]o executive official or agency can be given absolute authority to determine what documents in his possession may be considered by the court in its task.").  Similarly, as the court stated in EEOC v. Los Alamos Constructors, Inc., 382 F.Supp. 1373, 1375 (D.N.M. 1974), "[w]hen the government or one of its agencies comes into court ... it is to be treated in exactly the same way as any other litigant. Appointment to office does not confer upon a bureaucrat the right to decide the rules of the game applicable to his crusades or his lawsuits."

Id.

As a result, various courts have found Touhy regulations to be without force and effect where such regulations conflict with the court's authority as set forth in the Federal Rules of Evidence and the Rules of the Court.  See, e.g., Res. Investments, Inc. v. United States, 93 Fed. Cl. 373, 380-81 (Fed. Cl. 2010) (noting that "[w]ith near unanimity, however, those courts considering the issue have concluded that, when the United States is a party to the litigation, the reach of disclosure-limiting Touhy regulations ends at the courthouse doors" (citing numerous cases) and holding "[t]herefore, the court concludes that these regulations, which are clearly in conflict with the court's authority as set forth in the Federal Rules of Evidence and the Rules of the Court, can have no force or effect."); see also Romero v. United States, 153 F.R.D. 649, 652 (D. Colo. 1994) ("Once [the expert witness] is called, then the Federal Rules of Evidence control his testimony, not administrative regulations promulgated by the Department of the Army. . . . the Federal Rules of Evidence will override such regulation, as Federal Rules of Evidence have been approved, implicitly or tacitly, by Congress" and "it simply makes no sense

19

that a party [the federal government] would be allowed to determine whom the other side may endorse as a witness").

Here, the United States has argued that Plaintiffs cannot obtain a testimony authorization as to six of the deponents based on its determination that the topics are not relevant, and argues that without that testimony authorization the Court must issue a protective order.  However, the United States is a party, so although the Treasury Department regulations do contemplate that in this situation Plaintiffs would be required to obtain a testimony authorization and Plaintiffs' testimony authorization was denied here, the Federal Rules of Civil Procedure direct the Court to determine the scope of discovery. As discussed above, the discovery sought in these depositions is relevant to Plaintiffs' claims and discoverable to the extent that it is not protected by privilege.  Accordingly, the Touhy regulations at issue here do not support the United States' motion for a protective order.

Lastly, the United States argues that the deposition topics identified by Plaintiffs seek information that is protected from disclosure by 26 U.S.C. §6103 or shielded from discovery by the deliberative-process privilege, the attorney-client privilege or the work-product doctrine.  As discussed above with respect to whether section 6103 protects information relevant to Plaintiffs' third theory, courts often wait to decide issues of privilege until they have specific questions or facts before them.  Doing so makes sense with the attorney-client privilege, which does not protect every communication between attorneys and clients but only those "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) . . . relating to that purpose, (4) made in confidence (5) by the client, . . . (8) unless the protection is waived." Reed v. Baxter, 134 F.3d 351, 355-56 (6th Cir. 1998).  Similarly, the

20

work product doctrine does not protect every document that an
attorney has written or received, but rather "any document
prepared in anticipation of litigation by or for the attorney."
In re Antitrust Grand Jury, 805 F.2d 155, 163 (6th Cir. 1986)
(citation omitted).  Accordingly, the applicability of these
privileges will depend upon the context and purpose of the
specific documents and communications being sought.  The same
holds true for the deliberative process privilege.

　　　As with the other protections, the deliberative process
privilege is difficult to determine in the abstract.  The
deliberative process privilege protects certain intra-agency
deliberations involving a then-upcoming decision by the agency:

> The most frequent form of executive privilege raised in
> the judicial arena is the deliberative process
> privilege; it allows the government to withhold
> documents and other materials that would reveal
> "advisory opinions, recommendations and deliberations
> comprising part of a process by which governmental
> decisions and policies are formulated." [Citations
> omitted.]  Although this privilege is most commonly
> encountered in Freedom of Information Act ("FOIA")
> litigation, it originated as a common law privilege.
> [Citations and footnote omitted.]  Two requirements are
> essential to the deliberative process privilege: the
> material must be predecisional and it must be
> deliberative. [Citations omitted.]  Both requirements
> stem from the privilege's "ultimate purpose[, which]
> ... is to prevent injury to the quality of agency
> decisions" by allowing government officials freedom to
> debate alternative approaches in private.  [Citations
> omitted.]

In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997) (citations
omitted).  The D.C. Circuit Court went on to note, "[t]he
deliberative process privilege does not shield documents that
simply state or explain a decision the government has already
made or protect material that is purely factual, unless the
material is so inextricably intertwined with the deliberative

21

sections of documents that its disclosure would inevitably reveal the government's deliberations." Id. at 737 (citations omitted). Finally, the D.C. Circuit Court stated, "[t]he deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." Id. at 717 (footnote omitted).

Parties can assert the various privileges and section 6103 protections during the course of the depositions, at which time there will be concrete questions before the parties or the Court. In light of the representations the United States has made regarding the potential deponents, Plaintiffs may be well advised to consider what testimony they may elicit from certain deponents that would not be protected by section 6103 or protected by some other privilege to determine whether certain depositions might be fruitless. That is not a criticism of Plaintiffs, however, as the Court also notes that the United States did not communicate with Plaintiffs regarding privilege or the relevant knowledge of particular deponents until the briefing for these motions.

Accordingly, the United States has failed to demonstrate good cause for issuing a protective order, and Plaintiffs have demonstrated that Defendants refused to make the deponents at issue available. Therefore, Plaintiffs' motion to compel depositions will be granted and the United States' motion for a protective order will be denied.

D. Motions for Enlargement of Time

The United States moved for an enlargement of time to complete discovery by the end of April and to file motions for summary judgment by May 23, 2014. In mid-April, when the first motion had not been decided, the United States filed an additional motion for an enlargement of time seeking to extend the close of discovery until 60 days after the Court rules on this motion, and the deadline for motions for summary judgment until 90 days after the Court rules on this motion.

22

The United States argues that Plaintiffs took approximately six months to respond to their document requests, resulting in the documents being produced about two weeks before the close of discovery.  However, the United States acknowledges that upon receiving the document requests, Plaintiffs informed the United States that they needed a protective order prior to the production of documents, and Plaintiffs provided a draft protective order a month after the discovery requests were served.  The United States did not respond to the proposed protective order for over two-and-a-half months.  The United States argues that this was partially due to the government shutdown.  Regardless, the delay was in no way the fault of Plaintiffs.  The parties then took an additional two months to reach an agreement and file a joint motion for entry of a protective order.  The Court granted the motion the next day, and Plaintiffs produced the documents the day the motion was granted.

There is no question that the United States contributed substantially to the delay in completing discovery.  However, one goal of requiring parties to adhere to deadlines is to keep the case moving along and prevent delay in the ultimate resolution of the case.  Here, the Court is granting additional discovery to Plaintiffs, and as a result, discovery will be continuing for several months.  If the United States can complete discovery in the same amount of time as Plaintiffs, it will not impede the progress of this case.  Accordingly, given the unusual circumstances of this case, and for the purposes of completeness, the Court will grant the United States' motion for enlargement of time.  (Doc. 60).  The Court recognizes that Plaintiffs have now filed a summary judgment motion and argue that it would be unfair to allow the United States to conduct discovery now that it has seen Plaintiff's arguments, but (1) the United States will still have to respond timely to the motion unless it can establish the

basis for an extension under Rule 56(d), and (2) Plaintiffs'
theories of the case were already disclosed in detail in their
discovery motion.  Further, the Court's goal in this case is to
make a decision based on all relevant facts, not to give one side
or the other a procedural advantage that might prevent relevant
facts from being presented to the Court.  Consequently, the fact
that Plaintiffs have now moved for summary judgment does not
alter the Court's decision.

III.  <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' Motion to Compel the
Production of Documents (Doc. 45) is granted as follows:

1.  To the extent that it has not done so already, the
United States shall, within 14 days of the date of this Order,
produce:

      1.1  The documents it has agreed to produce in
response to Request Numbers 3, 7, and 10;

      1.2.  Non-privileged documents responsive to Request
Number 1 to the extent that such documents exist; and

      1.3  To the extent that it has not done so already,
the non-privileged documents responsive to Request Number 16 that
the United States represented that it has already located and for
which it has been conducting a privilege review.  The United
States shall produce the remaining, non-privileged documents
responsive to Request Number 16 within 30 days of the date of
this Order.

2.  To the extent that it has not done so already, the
United States shall produce the following documents or take the
following actions within 30 days of the date of this Order:

      2.1  Non-privileged documents responsive to Request
Number 22;

      2.2  If the United States has not located the second
box of materials that it believed existed, an explanation of the

24

steps it has taken to try to locate that second box of materials;

        2.3 Non-privileged documents responsive to Request Number 8;

        2.4 Non-privileged documents responsive to Request Numbers 12 and 13 for the time periods and taxpayers involved in this litigation; and

        2.5 Non-privileged documents relating to Executive Jet Management, Inc. that are responsive to Request Numbers 11 and 17 for the time periods involved in this litigation.

All of the requests described above are from Plaintiffs' First Request for Production of Documents. This order shall not be interpreted to require the United States to produce documents in violation of 26 U.S.C. §6103.

Also for the foregoing reasons, Plaintiffs' Motion to Compel Depositions (Doc. 46) is granted as to the depositions of the United States' employees. The United States' Motion for the Entry of a Protective Order (Doc. 51) is denied as to all potential deponents.

Finally, the United States' Motion for an Enlargement of Time to Complete Discovery and to File Motions for Summary Judgment (Doc. 60) is granted, and the earlier motion by the same name (Doc. 48) is denied as moot. All discovery shall be completed within 60 days of the date of this order, and any additional dispositive motions shall be filed within 90 days of the date of this order. The pending motion for summary judgment shall be briefed in accordance with the Court's Local Civil Rules unless that time is extended based upon either the filing of a meritorious motion under Fed.R.Civ.P. 56(d) or other good cause for an extension.

        IV. <u>Procedure for Reconsideration</u>

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for

reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

                              /s/ Terence P. Kemp
                              United States Magistrate Judge