UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NETJETS LARGE AIRCRAFT, INC., et al.,
      Plaintiffs,

                              Case No. 2:11-CV-1023
      v.                        JUDGE EDMUND A. SARGUS, JR.
                              Magistrate Judge Terence P. Kemp

UNITED STATES OF AMERICA,
      Defendant.

## OPINION AND ORDER

This matter is before the Court on the United States' objections, doc. 66, to Magistrate Judge Kemp's order resolving a number of the parties' discovery disputes, doc. 65. For the reasons that follow, the Government's objections are **OVERRULED**.

### I. BACKGROUND

**A. Facts**

Plaintiffs in this action are companies that provide management services to people or corporations that own (in whole or in part) airplanes. Private airplane owners pay the Plaintiff companies for assistance with federal filings, maintenance, service, repair, and, when requested, pilots and crew. Each of the Plaintiff companies is a wholly owned subsidiary of NetJets, Inc. For the sake of ease, the Court refers to the Plaintiffs collectively as NetJets.

The parties dispute whether a particular provision of the federal tax code, 26 U.S.C. § 4261, applies to the NetJets companies. Section 4261, which NetJets calls a ticket tax, imposes a tax on the amount paid for "taxable transportation." 26 U.S.C. § 4261(a). The tax must "be paid

1

by the person making the payment subject to the tax." *Id.* § 4261(d).  As a run-of-the-mill example, the provision requires someone who buys an airline ticket to pay a tax on the transaction.  The taxpayer does not pay the tax directly to the Internal Revenue Service (IRS). Instead, she pays the entity from which she purchased the travel; that entity—the one that provides the transportation—must then "collect the amount of the tax." *Id.* § 4291.

According to its complaint, it came as a surprise to NetJets in 2007 when the IRS "adopted the view" that NetJets was obligated to collect the tax.  Doc. 1 ¶ 57.  The IRS made good on this view in 2010 when it proposed assessments and penalties for tax periods spanning four to six years (depending on the plaintiff). *See id.*  NetJets contends that it was not obligated to collect and remit the tax; the Government disagrees. *See* doc. 65 at 1–3 (Magistrate Judge Kemp's order detailing several tax-law developments that shed light on the nature of the parties' dispute).  After its protests and refund claims were denied, NetJets filed this action seeking a refund and abatement of all section 4261(a) taxes paid on occupied hourly fees, monthly management fees, fuel variable surcharges, and pass through costs.

## B. Procedure

The parties filed a number of discovery-related motions at the beginning of 2014. NetJets has sought (throughout discovery) information about and depositions relating to how the IRS has interpreted and applied the ticket-tax section at issue. *See* doc. 45 (NetJets' motion to compel documents); doc. 46 (NetJets' motion to compel depositions); *see also* doc. 51 (the Government's motion for a protective order).  On April 28, 2014, Magistrate Judge Kemp issued an order largely siding with NetJets.  He granted NetJets' motion to compel and directed the United States to produce non-privileged documents responsive to Requests 8, 11, 12, 13, 16, 17, and 22, *see* doc. 65 at 25–26; he granted NetJets' motion to compel the depositions of several

current and former IRS employees, *see id.* at 25; and he denied the Government's motion for a protective order, *id.* The Government timely filed the objections now at issue. Doc. 66.

## II. DISCUSSION

### A. Standard of Review

As a threshold matter, the parties dispute which standard the Court should use to review the Government's objections. The Government initially "request[ed] a *de novo* determination of certain rulings recommended in" Magistrate Judge Kemp's order. Doc. 66 at 1. When pressed by NetJets on this point, the Government conceded that "the contrary to law standard [under Federal Rule of Civil Procedure 72(a)] is applicable here." Doc. 77 at 1. According to Rule 72(a), when a party objects to a magistrate judge's non-dispositve order, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). The "clearly erroneous" standard applies to factual findings and the "contrary to law" standard applies to legal conclusions. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). Magistrate Judge Kemp's order only addressed issues of law. The Court thus applies the "contrary to law" standard here.

### B. The Government's Objections

#### 1. A *De Novo* Standard of Review

The Government's broadest objection asserts that Magistrate Judge Kemp's order misapprehends the nature of this case. According to this argument, internal IRS documents do not matter in this case given that *the Court* must reach a conclusion on the ultimate issue— whether NetJets is liable for the transportation excise tax—as a matter of law *de novo*, meaning

3

without regard to anything else on the record. *See* doc. 66 at 1 (citing *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932), and *Gen. Motors Corp. v. United States*, No. 07-14464, 2009 WL 5171806, at *3 (E.D. Mich. Dec. 23, 2009)). Because courts make determinations of tax liability *de novo*, the Government argues, the law necessarily precludes NetJets from any of the documents or depositions it seeks. The Court disagrees and thus overrules this objection.

First, the Government's objection on this point is ill-timed. The objection addresses the merits of this case: who is liable under the tax and which standard of law the deciding court should use to answer this question. Judge Kemp's order, on the other hand, was much narrower. It addressed discovery issues, particularly what is or might be relevant as to all of NetJets' claims for discovery purposes. *See* doc. 65 at 3–4 ("The Federal Rules of Civil Procedure provide that . . . '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.'" (quoting Fed. R. Civ. P. 26(b)(1)) (emphasis added)). Because this objection addresses the merits and ultimate resolution, the Court finds it more suitable for a motion for summary judgment rather than for the discovery stage.

Second, the cases the Government cites do not, as a matter of law, foreclose reference to the documents or depositions NetJets seeks. Broadly, cases like *Lewis* and *General Motors* have more to do with which party owns the burden of proof in tax-refund cases. *See, e.g.*, *Lewis*, 428 U.S. at 440 ("In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover."); *see also Cook v. United States*, 46 Fed. Cl. 110, 116 (Fed. Cl. 2000) ("[U]nquestionably the burden of proof is on the taxpayer . . . ." (quoting *Helvering v. Taylor*, 293 U.S. 507, 515 (1935)). To this end, the cases citing *Lewis* for the proposition that tax-refund

4

issues are settled *de novo* and without any reference to internal IRS deliberations acknowledge that this rule is not absolute. *See, e.g.*, *Cook*, 46 Fed. Cl. at 114 ("[T]he Supreme Court likewise has observed that the presumption of correctness does not apply when the government's assessment falls within a narrow, but important, category of a naked assessment without any foundation whatsoever . . . ." (internal quotation marks omitted)).

Third, and relatedly, Magistrate Judge Kemp acknowledged each of these points in coming to his conclusion. As he explained: of the four grounds NetJets advances to support its request for relief, only one argues that the tax at issue does not apply as a matter of law. If this were the only ground advanced, Magistrate Judge Kemp noted, "[i]t seems clear . . . Plaintiffs . . . would not need most of the discovery being sought in the motions to compel." Doc. 65 at 6. But Plaintiffs do not advance just one theory for relief. They point to three additional theories to support relief "even if the Court determines that [they] are subject to [the excise tax] as a matter of law." *Id.* The Government contests these theories within its other more specific objections. Rather than ruling in blanket fashion on a broad objection that applies only to one of NetJets' theories, the Court addresses the Government's arguments against these theories objection by objection.

### 2. Internal IRS Documents or Deliberations

According to NetJets' second theory of relief, the IRS failed to provide "clear guidance to the Plaintiffs that they were required to collect the tax." Doc. 65 at 7. Judge Kemp held that NetJets' notice theory—that a party cannot be held secondarily liable to pay a given tax absent proper notice—did have some viability based on *Cent. Ill. Pub. Serv. Co. v. United States*, 435 U.S. 21 (1978); and, "since notice is an issue in this case," that NetJets was entitled to discovery about it, doc. 65 at 7. The Government objects and argues, in essence, that the Court can only

rely on publicly disclosed communications in making an objective *de novo* determination of whether the IRS provided NetJets with adequate notice of its secondary tax liability according to the transportation tax. The dispute on this count requires the Court to answer one question: was Magistrate Judge Kemp's holding (that internal IRS communications are relevant to the issue of notice) contrary to law?

The answer is no. The cases referenced by the Government address the issue of whether the tax applies at all to NetJets. As they indicate, courts generally should decide tax-related issues *de novo* and without any reference to internal IRS communications. *See, e.g.*, *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991) ("The factual and legal analysis employed by the Commissioner is of no consequence to the district court."); *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987) ("In general, courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment."); *id.* ("[C]ourts conduct a *de novo* review of the correctness of the assessment, imposing the risk of nonpersuasion on the taxpayer."). But, as Magistrate Judge Kemp explained, NetJets advances more than one theory in this case and the parties dispute more than the issue of whether the tax applies as a matter of law. The theory at issue under this objection accepts only for the sake of argument that the ticket tax applies; it then argues based on *Central Illinois* that NetJets, as a secondary collector, still cannot be held liable because it did not receive proper notice. To this end, the Government has failed to cite a controlling case that renders Magistrate Judge Kemp's holding contrary to law.

Further, NetJets advances several citations to show that Magistrate Judge Kemp's holding as to the relevance of outside determinations finds at least some support in other cases. *See Central Illinois*, 435 U.S. at 31 ("Because the employer is in a secondary position as to liability for any tax of the employee, it is a matter of obvious concern that, absent further specific

6

congressional action, the employer's obligation to withhold be precise and not speculative.");
*Gen. Elevator Corp. v. United States*, 20 Cl. Ct. 345, 353 (Cl. Ct. 1990) ("The deputy tax collector, the employer, must have adequate notice so that it will know what the IRS thinks the law is and therefore what actions they have to take. . . . A careful review of all of the revenue rulings which defendant cites as having provided adequate notice to plaintiff of its obligation to withhold from per diem payments clearly shows that none specifically apply to the circumstances respecting plaintiff's per diem arrangement." (internal quotation marks omitted));
*Pierson v. United States*, 428 F. Supp. 384, 391 (D. Del. 1977) (noting that "the full administrative record" was relevant in reviewing the "Commissioner's decision under Section 7805(b) to revoke the 1969 rulings retroactively").

For these reasons, Magistrate Judge Kemp's holding as to the notice theory is not contrary to law and the Government's objection on this count is overruled.

### 2. How Similarly Situated Taxpayers Were Treated

The Government advances several objections relating to NetJets' third argument for relief, which amounts to a disparate-treatment theory. According to this line of argument, the transportation tax does not apply here because the IRS violated its duty to treat similar taxpayers in a consistent manner. The Court addresses each objection in turn.

### a. Whether the Theory Creates a Right to Escape Tax Liability

Magistrate Judge Kemp wrote the following regarding NetJets' disparate-treatment argument:

> This theory turns on a duty articulated in, among other cases, Sherwin-Williams Co. v. United States, 403 F.3d 793, 797 (6th Cir. 2005) ("As a general matter, similarly situated taxpayers should not be treated differently"). The United States asserts, without any support, that such a duty does not create in a taxpayer a right to escape its tax liability. The reported and

7

> unreported decisions on this issue show significant disagreement about whether the violation of the IRS's duty to treat similar taxpayers in a consistent manner can be an affirmative defense to an otherwise proper tax liability. See[,] e.g., Steve R. Johnson, An IRS Duty of Consistency: The Failure of Common Law Making and A Proposed Legislative Solution, 77 Tenn. L. Rev. 563, 567 (2010) ("Unfortunately, the result of common law making has been doctrinal chaos").

Doc. 65 at 9. According to the Government, the law establishes that disparate treatment cannot be a defense to statutory tax liability. True, "multiple courts," as the Government argues, have found that the disparate-treatment argument lacks merit. Doc. 66 at 7; *see, e.g., Hostar Marine Transp. Sys. v. United States*, 592 F.3d 202, 209 (1st Cir. 2010) ("The goal of treating similarly situated taxpayers consistently is general, not strict. . . . [T]he courts, including the Second Circuit, the Tax Court, the Court of Claims, and the Court of Federal Claims, have not, in fact, prohibited the IRS from treating similarly situated taxpayers disparately.").

As Magistrate Judge Kemp points out, the Sixth Circuit has acknowledged that "[t]here is no dispute that, as a general matter, similarly situated taxpayers should not be treated differently." *Sherwin-Williams Co. v. United States*, 403 F.3d 793, 797 (6th Cir. 2005).[1] Magistrate Judge Kemp also properly pointed out that the Sixth Circuit did not rule out, as a matter of law, the disparate-treatment argument. *See id.* (discussing why the argument failed

---

[1] The Government also objects to Magistrate Judge Kemp's treatment of *Sherwin-Williams*. *See* doc. 66 at 8–9 (objections 2 and 4). According to the Government's argument, the *Sherwin-Williams* court dismissed the viability of the disparate-treatment theory. The Government is partially correct. The *Sherwin-Williams* dismissed the disparate-treatment theory in that particular case, not as a matter of law. *See, e.g., Sherwin-Williams*, 403 F.3d at 798 ("Finally, even assuming that the two trusts are similarly situated, the fact that the CP & L Trust's unrelated business taxable income was taxed at the corporate rate, rather than the trust rate, appears to have been an isolated—and, as illustrated by the foregoing analysis, erroneous—occurrence."). The court acknowledged by implication that, under the proper circumstances, a disparate-treatment theory could carry the day. *See id.* ("Although it does appear from that petition that the CP & L Trust's unrelated business taxable income was taxed at the corporate rate, rather than the trust rate, that fact alone is insufficient to prove disparate treatment. First, the CP & L matter is distinguishable from the present case because it involved a deficiency proceeding rather than a refund suit, and because the issue presented concerned the amount of income that was subject to tax, not the rate at which that income should be taxed. Second, we cannot discern from the CP & L petition alone whether the CP & L Trust is similarly situated in all relevant respects to the Trust in this case."). For these reasons, Magistrate Judge Kemp's opinion was not contrary to law. The Government's objections on this count are thus overruled.

based on the evidence and arguments advanced in that particular case). More, other courts have held that the disparate-treatment argument can be a viable theory for evading tax liability. *See, e.g.*, *Computer Scis. Corp. v. United States*, 50 Fed. Cl. 388, 398 (Fed. Cl. 2001) ("In summary, the Service committed an abuse of discretion when it discriminated among similarly-situated taxpayers without any rational basis for such discrimination in Revenue Ruling 90–105. The plaintiff was entitled to deduct the Contributions in Dispute on its TY 1990 return."). This is enough to show that Judge Kemp's holding was not necessarily contrary to law. The Government's objection on this count is thus overruled.

### b. *Vons Cos. v. United States*, 51 Fed. Cl. 1 (2001)

The Government brings an objection to Magistrate Judge Kemp's treatment of *Vons Cos. v. United States*, 51 Fed. Cl. 1 (2001). Judge Kemp wrote:

> The United States also points to Vons Companies, Inc. v. United States, 51 Fed. Cl. 1, 12 (Fed. Cl. 2001) modified, 00-234T, 2001 WL 1555306 (Fed. Cl. Nov. 30, 2001), to support its argument that discovery about disparate treatment is not appropriate here. However, the Vons case was a de novo proceeding, which made internal IRS deliberations irrelevant. Id. at *5-6.

Doc. 65 at 9. The Government argues that "[t]his distinction is patently wrong," and that "[i]n any refund suit—including both Vons and the instant case—a taxpayer's liability is adjudicated *de novo*, without regard to the analysis or reasoning underpinning the IRS' determinations of the taxpayer's liability." Doc. 66 at 8. Broadly, the Court does not read *Vons* to demonstrate that Magistrate Judge Kemp's explanation amounted to legal error. *See, e.g.*, *Vons*. 51 Fed. Cl. at 10 (explaining the limitations of when a party can use outside documents like "letter rulings to demonstrate disparate treatment of direct competitors"). Even if it did, the explanation of *Vons*

9

came in dicta and was not the sole pillar of support for the decision. The objection is thus overruled.

### c. *Touhy* Regulations

The Government has argued in this case that NetJets failed to comply with applicable regulations that control an IRS employee's disclosure of official information. *See Touhy v. Ragern*, 340 U.S. 462, 467–69 (1951). It contends that the guiding regulations "preclude the disclosure of information by current or former Treasury Department employees without prior approval of the Commissioner of Internal Revenue or the appropriate delegate." Doc. 65 at 18. Judge Kemp disagreed and cited *Alexander v. FBI*, 186 F.R.D. 66, 70–71 (D.D.C. 1998), for the proposition that *Touhy* does not apply when the Government is a party. The Government objects, contending that Judge Kemp's "conclusion overstates the holding of *Alexander*" and that *Touhy* regulations do in fact apply in any matter where the United States is a party. Doc. 66 at 10 (citing 26 C.F.R. § 301.9000–1(f)). For the reasons articulated in his opinion and order, the Court finds that Magistrate Judge Kemp's conclusions as to the *Touhy* issue are not contrary to law. *See, e.g.*, *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012) (citing with approval the "District of Columbia Circuit['s] expla[nation] [of] the longstanding *Touhy* framework," which applies "[w]hen a litigant seeks to obtain documents from a non-party federal government agency"); *Alexander*, 186 F.R.D. at 70 ("The Supreme Court's holding in *Touhy* is applicable only in cases where the United States is not a party to the original legal proceeding." (citing *Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992)).

### d. Attorney–Client and Deliberative-Process Privileges

With its final objection, the Government takes issue with Magistrate Judge Kemp's decision to handle the Government's assertions of privilege as they arise. *See* doc. 65 at 22

("Parties can assert the various privileges and section 6103 protections during the course of the depositions, at which time there will be concrete questions before the parties or the Court.").

The Government argues against this decision on several grounds.  It contends that the decision presents, "[a]s a practical matter," a number of problems, doc. 66 at 11; that some of the information sought necessarily will be protected by 26 U.S.C. § 6103(b)(2); and that the intent of the *Touhy* regulations should prevent the Government from having to undertake "the cost of pointless depositions," *id.*  None of these arguments proves Magistrate Judge Kemp's decision contrary to law.  For the reasons in Magistrate Judge Kemp's opinion and order, and based on the cases cited by NetJets in response, this objection is overruled.  *See, e.g.*, *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) ("A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify.").

## III. CONCLUSION

For the reasons stated, the Government's objections, doc. 66, to Magistrate Judge Kemp's opinion and order, doc. 65, are **OVERRULED**.

**IT IS SO ORDERED.**

7-11-2014
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

11